WILLIAM P. SNEED V. THE TERRITORY OF OKLAHOMA.

(Filed February 24, 1906.)

1. HOMICIDE—Self Defense—Evidence. On a trial for murder com-mitted in Oklahoma, where the defense is justifiable homicide, evi-dence that the defendant told the sheriff in Texas some time after the homicide that if any papers came from Oklahoma for his ar-rest. to notify him and he would surrender, is not competent, in view of the existing facts of this case.

2. SAME—Error to Exclude. On a trial for murder, where the de-fense is justifiable homicide, evidence offered on behalf of the de-fendant to prove that the deceased about dark the evening of the homicide had had a difficulty with one Charles Christy, which grew out of an invitation by the deceased to drink with him; Christy re-fusing, thereupon the deceased became angry, threw Christy upon the floor, drew his pistol, attempted to shoot him, but was pre-vented from so doing by the defendant, is competent for the pur-pose of showing the disposition of the deceased to become angry with friendly persons upon small or no provocation, and to prove his condition of mind, violent temper, his viciousness on such oc-casions and disposition to use a gun; and to exclude such testi-mony when offered is error.

3. SAME—Disposition of Deceased The knowledge of the defendant, derived from such personal observation as well as otherwise, of the violent temper of the deceased and his liability to attack persons without cause, is a most important circumstance in determining from the standpoint of the accused the reasonableness of the dan-ger apprehended by him, and from which the defendant might esti-mate the conduct of the deceased, the character of the attack made upon him, and what he might expect from his assailant, as well as that which he might at the moment deem necessary to guard himself against.

(Syllabus by the Court.)

*Error from the District Court of Comanche County; before F. E. Gillette, Trial Judge.*

*Gilbert & Gilbert, Keys & Hussey,* and *G. A. Brown,* for plaintiff in error.

*P. C. Simons, Attorney General,* for defendant in error.

Opinion of the court by

PANCOAST, J.:   On November 20, 1902, the plaintiff in error, defendant below, was indicted by the grand jury of Comanche county, charged with the murder of James Ferber, on September 6, 1902.   He was tried and found guilty of manslaughter in the first degree and sentenced to imprisonment in the penitentiary for a period of eight years.

A brief summary of the facts is that the defendant was a saloon keeper, conducting a saloon in the town of Texawa. The deceased was an acquaintance of the defendant, the two having been acquainted for several months, had boarded at the same place, the deceased visiting the defendant's place of business frequently, the two going to and from their meals daily in company, and there being apparently more than ordinary friendship existing between them.

On the night of the homicide and shortly before, the deceased had been in the defendant's place of business, as was his usual custom, at times, and was more or less under the influence of liquor, although the evidence is somewhat conflicting as to his exact condition.   The deceased, during the evening had displayed a revolver, and had while sitting down snapped it several times in the direction of the feet of a person who was in the room. There is some evidence by one witness to the effect that he loaded his pistol after snapping it. At some time probably between twelve and one o'clock at night

the deceased suggested to the defendant and others the idea of going to a grocery store near by to procure something to eat. He started out for that purpose, the defendant taking his money from the drawer, and his revolver from the place where it lay, and made the remark that he would take the money, and if any one should get in while he was gone, they couldn't get more than something to drink, and all went out the front door of the saloon. Only two, the defendant and the deceased started for something to eat, the others remaining. They proceeded to the front door of the grocery. Being unable to enter they started for the rear of the store, which was some little distance from the saloon. Directly after arriving there, several shots were heard, there being no eye witnesses to the difficulty, *other than the defendant and the deceased.* The evidence is not quite certain as to the number of shots fired. Some of the witnesses place it at five or six, some more and possibly some less.

Directly after the shooting, the defendant returned to near the saloon stating that he had had to kill the deceased, One witness testifies that he heard the defendant say that he had killed the 'damn-son-of-a——;——''. Others testified that he said in substance, that he had killed his best friend; that he had to do it. Others testify to a somewhat more detailed statement by the defendant and also that the defendant when he returned from the difficulty had blood upon his head, and that the defendant stated, among other things, that the deceased had struck him upon the head with his gun. It also appeared that the defendant, either that evening or the next morning, and probably both, gave a detailed statement of how the difficulty occurred, which was in substance that when they came to the rear end of the grocery store, the deceased

struck the window with his gun and broke the glass; that the defendant told him not to do that; that they entered the room through the back door, and it being dark, the defendant asked the deceased for a match; whereupon the deceased turned upon him and told him he was match enough for the defendant, and struck him upon the head with his gun. Whereupon the defendant said to the deceased "If you are going to hit your friend, I will leave;" that he saw the deceased was angry, and walked out of the door; that the deceased threw his gun down upon the defendant, and said, "Man, I have got you," and snapped his gun at the defendant. The defendant testifies that the deceased not only snapped the gun, but fired a shot, and that he, the defendant then dropped upon his knee and commenced firing, continuing until he emptied his revolver. The evidence also shows that the shots were fired by the defendant at close range, as some of the clothes were powder burned. An examination of the body of the deceased directly after the difficulty showed that he lay upon the ground a short distance from the rear end of the building with his revolver near his left hand, all the chambers empty.

There is also evidence to the effect that the deceased when sober was not unpleasant, but when drunk, or under the influence of liquor, was at times disagreeable and dangerous. All six shots took effect upon the body of the deceased, entering from the front, passing toward the rear from different places upon the body.

The defendant gave himself up to the officers, made no effort to get away, and was released from custody, no charge being made against him until the grand jury found the indictment, at which time he had gone to his old home in Texas.

After verdict, motion for new trial was made and overruled. The defendant brings the case here, and asks that the case be reversed for numerous reasons assigned in the petition in error, and argued in the brief.

The first assignment of error is that the court refused to allow the defendant to introduce into evidence certain conversations he had with the officers of Texas where he lived before he was arrested, to the effect that he told the deputy sheriff there if any papers came from Oklahoma for his arrest for the killing of Ferber, to notify him and he would come in and surrender; and also that after he had been arrested, that he was not confined in jail, and made no attempt to escape.

This evidence was properly excluded, it being in the nature of a self-preserving declaration, and there being no evidence indicating he had in any way resisted or fled from arrest, it was not contradictory of anything offered by the Territory. While it is true that the defendant argues in his brief that this evidence was competent because of the fact that the Territory had offered evidence to show that he did flee from the Territory to avoid arrest, yet we think the testimony referred to does not go to that extent.

The second alleged error is because of the exclusion of the testimony of Arthur McClure, a witness called on behalf of the defendant to prove that the deceased, about dark of the evening of the homicide, had had a difficulty with one Charles Christy, which grew out of an invitation on the part of the deceased to drink with him. Christy refusing, thereupon the deceased became angry, threw Christy upon the floor, drew his pistol, attempted to shoot him but was pre-

vented from doing so, or at least the two were separated, by the defendant. The objection to this simply was that it was incompetent, irrelevant and immaterial. The purpose of its introduction was to show the disposition of the deceased to become angry with friendly persons upon small or no provocation, and his condition of mind and violent temper, as well as his viciousness on such occasions, and disposition to use his gun. The court seems to have excluded this testimony on the theory that it was a collateral matter, or an attempt to prove the character of the deceased by specific acts.

The general rule is well settled by a long line of decisions that neither in criminal nor civil cases can the character or reputation of a person be proven by specific acts; but this is only the general rule, and if the offer of evidence under consideration here can be classed as an attempt to prove character or reputation by specific acts, then it falls within an exception to the general rule; but we think that while the evidence sought to be introduced may tend to show the character of the deceased, yet the purpose of its introduction and the reason for its admissibility was that it showed knowledge in the defendant of the violent temper of the deceased, and his disposition to use his gun on small provocation; also his condition of mind when affected by the use of liquor, or when in a condition of intoxication, and this violent temper, condition of mind, and disposition to use a gun upon small provocation, was information to the defendant, brought home to him by reason of his personal observation of the defendant and his acts. The knowledge of the defendant, derived from such personal observation, as well as otherwise, of the violent temper of the deceased, and his liability to attack persons without cause, is a most important circumstance in

determining from the standpoint of the accused the reasonableness of the danger apprehended by him, and from which the defendant might estimate the conduct of the deceased, the character of the attack made upon him, and what one might expect from his assailant, as well as that which he might at the moment deem necessary to guard himself against. Certainly the knowledge derived from this source of the acts of the deceased showing his disposition for violence and a depraved condition of mind, would be as likely or more likely to affect the mind of the defendant than general information he might have obtained in common with the community, that the deceased was a man of high temper and violent disposition when in a state of intoxication. *People v. Harris,* 95 Mich. 87; *Hurd v. People,* 25 Mich. 405-418; *People v. Lillie,* 38 Mich. 270 *State v. Testerman,* 68 Mo. 408.

This testimony which was excluded was peculiarly important in this case, because of the fact that there was no eye witness to the affray other than the defendant, and because the evidence showed that the defendant and the deceased were on friendly terms, were up to the very moment of the difficulty friends, and at the moment of the difficulty, without any provocation, either one or the other committed an uncalled for violent attack upon the other, which attack was of a character and under conditions not susceptible of explanation except upon the hypothesis that it was unprovoked. This being true, it was of the utmost importance that the jury should be allowed to hear evidence from which they could determine who provoked the attack, and the testimony excluded would certainly tend to throw some light upon that proposition, and its exclusion was reversible error.

Having reached the conclusion that error was committed, it will not be necessary to refer to all the assignments of error. For the reasons given, the case is reversed and remanded to the district court of Comanche county for further action.

Gillette, J., who presided in the court below, not sitting; all the other Justices concurring.