### Jim Harrold v. Territory of Oklahoma.

(Filed February 15, 1907.)

1. **EVIDENCE—Prisoner as Witness—Cross Examination.** A prisoner who takes the witness stand in his own behalf waives his constitutional privilege of silence, and the prosecution has the right to cross-examine him upon his evidence in chief with the same latitude as would be exercised in the case of an ordinary witness, as to the circumstances connecting him with the crime.

2. **EVIDENCE—Cross-Examination.** On cross-examination of a witness, the party cross-examining should be confined to the matters concerning which the witness has been examined in chief, but this rule should be liberally construed so as to permit any question to be asked on cross-examination which reasonably tends to explain, contradict or discredit any testimony given by the witness in chief or to test his accuracy, memory, skill, veracity, character, or credibility.

3. **SAME—Same.** The extent, manner and course of the cross-examination of a witness, even though it extends to matters not inquired about in his examination in chief, are very largely within the control of the court in the exercise of a sound discretion, and the exercise of that discretion, unless flagrantly abused, is not reviewable on appeal.

4. **SAME—Prisoner as Witness—Examination of.** When a prisoner on trial for a crime voluntarily takes the witness stand in his own behalf, he waives all privileges which he is entitled to by remaining silent, and subjects himself to the same rules of cross-examination and impeachment as any other witness; and he may be asked if he has not made certain statements, admissions or confessions out of court inconsistent with his testimony in the cause, and if he admits making such statements, he may explain or show the circumstances and conditions under which the statements were made; and if he deny making such statements, then the prosecution on rebuttal may prove the statements or admissions made by him, and this may be done even though the admissions or confessions would not have been admissible had he remained silent, by reason of not having been voluntary.

(Syllabus by the Court.)

*Error from the District Court of Comanche County; before
F. E. Gillette, Trial Judge.*

J. A. Baker, Geo. D. Key and S. H. Harris, for plaintiff in error.

P. C. Simons, Att'y Gen'l and Don C. Smith, Ass't for defendant in error.

Opinion of the court by

BURFORD, C. J.:  The plaintiff in error was convicted in the district court of Comanche county of the crime of stealing cattle, and sentenced to serve a term of four years in the penitentiary.

On the trial of the case the territory offered to prove certain statements made by the prisoner in the way of confessions. The prisoner's counsel objected to the competency of the confessions on the ground that they were not voluntary but were induced through promises of leniency by the prosecuting officers.  It appeared that there were other prosecutions pending against the prisoner, and some propositions had been made to him to dismiss some of the cases if he would tell all he knew about the stealing of cattle in the other cases. The court inquired into the circumstances under which the confessions were made, and excluded them.  A portion of this inquiry was in the presence of the jury, and a portion after the jury had been withdrawn.  It is contended that the action of the court in permitting the witness to testify as to the circumstances under which the confessions were made, is reversible error.

In the case of *Kirk v. Territory,* 10 Okla. 46, this court said:

"Where the competency of confessions is objected to on the ground that they were not voluntary or made under duress or promises of leniency, the court should withdraw the jury and hear all the facts and circumstances attending such alleged confession and determine its competency. If it is held incompetent, the matter should go no further: but if held competent and proof of same admissible, then the jury should be recalled, and are entitled to all the facts and circumstances attending such confession; not for the purpose of passing on its competency, but in order to determine the weight and credit to be given such confessions. It is not prejudicial error to hear such evidence in the presence of the jury where, on such hearing, the confessions are found to be competent, and evidence of such confessions is admitted. It could only be prejudicial error to hear such evidence in the presence of the jury where, on such hearing the court should hold the confessions incompetent, and exclude the evidence of the confessions. And even then it might not be prejudicial error. This question should be determined from a consideration of the entire record of the trial."

Plaintiff in error cites this case in support of his contention that the trial court committed prejudicial error in not withdrawing the jury during the time evidence was being heard upon the competency of the confession. Upon an examination of the whole record we think his contention untenable. The defendant went upon the stand as a witness in his own behalf and was examined fully and testified as to his whereabouts, actions, conduct, and whom he met or saw during the evening and night of the alleged larceny; also testified generally that he did not steal the cattle and had no knowledge on the subject. On cross-examination he was asked if he had not made certain statements to various parties, inconsistent with his testimony. These statements were

in part the confessions which had been excluded by the court
when offered by the prosecution in its case in chief.   He de-
nied making some of the statements, admitted making some,
and explained some others.   The prosecution on rebuttal sub-
mitted proof of the admissions and statements made by him
and denied by him on cross-examination.   If this evidence
was properly admitted it cured any error that may have been
committed in hearing the testimony as to the competency of
the alleged confessions in the presence of the jury.   In fact,
if the evidence was competent in the last instance, it made
the former testimony favorable to the defendant in that they
were then advised of all the circumstances and conditions
under which the admissions were made.   The action of the
court in permitting the defendant to be cross-examined upon
these matters over the objection of his counsel, is assigned
as error, and presents an interesting question.   The question
as to whether a person on trial charged with a crime, could
be compelled to testify to any matters on cross-examination,
was for a long time a subject of much speculation.   But the
question is no longer open to discussion.   In the case of
*Fitzpatrick v. United States,* 178 U. S. 304, 44 Law Ed. 1078,
Mr. Justice Brown, speaking for the court, said:

"Where an accused party waives his constitutional privi-
lege of silence, takes the stand in his own behalf and makes
his own statement, it is clear that the prosecution has a right
to cross-examine him upon such statement with the same
latitude as would be exercised in the case of an ordinary wit-
ness, as to the circumstances connecting him with the alleged
crime.   While no inference of guilt can be drawn from his
refusal to avail himself of the privilege of testifying, he has
no right to set forth to the jury all the facts which tend in

his favor without laying himself open to a cross-examination upon those facts.   The witness having sworn to an *alibi*, it was perfectly competent for the government to cross-examine him as to every fact which had a bearing upon his whereabouts upon the night of the murder, and as to what he did and the persons with whom he associated that night. · Indeed, we know of no reason why an accused person, who takes the stand as a witness, should not be subject to cross-examination as other witnesses are.   Had another witness been placed upon the stand by the defense, and sworn that he was with the prisoner at Clancy's and Kennedy's that night, it would clearly have been competent to ask what the prisoner wore, and whether the witness saw Corbett the same night, or the night before, and whether they were fellow occupants of the same room.   While the court would probably have no power of compelling an answer to any question, a refusal to answer a proper question put upon cross-examination has been held to be a proper subject of comment to the jury, *State v. Ober*, 52 N. H. 459; and it is also held in a large number of cases that when an accused person takes the stand in his own behalf, he is subject to impeachment like other witnesses.

"If the prosecution should go farther and compel the defendant, on cross-examination, to write his own name or that of another person, when he had not testified in reference thereto in his direct examination, the case of *State v. Lurch*, 12 Oregon, 99, is authority for saying that this would be error. It would be a clear case of the defendant being compelled to furnish original evidence against himself.   *State v. Saunders*, 14 Oregon, 300, is also authority for the proposition that he cannot be compelled to answer as to any facts not relevant to his direct examination."

And in *Sawyer v. United States*, 202 U. S. 150, 50 Law Ed. 972, it was said by Mr. Justice Peckham:

"It has been held in this court that a prisoner who takes the stand in his own behalf waives his constitutional privilege of silence, and that the prosecution has the right to cross-examine him upon his evidence in chief with the same latitude as would be exercised in the case of an ordinary witness, as to the circumstances connecting him with the crime."

This court in *Asher v. Territory,* 7 Okla. 188, held that "when a defendant takes the witness stand in his own behalf he thereby subjects himself to the same rules applicable to other witnesses." In the case of *Hyde v. Territory,* 8 Okla. 69, it was held by this court that when a prisoner takes the witness stand in his own behalf, the prosecution has the right to ask him whether or not he has been convicted of a particular crime, for the purpose of affecting his credibility.

From these authorities, and they are controlling, the rule is settled that when a prisoner goes upon the witness stand in his own behalf, he waives his constitutional right of silence and is subject to be cross-examined the same as any other witness, and under the same rules of practice, and this includes also the right to ask him any questions which tend to test his accuracy, veracity or credibility; or to shake his credit by injuring his character, though these latter matters are largely within the dscretion of the trial court. As to what is the proper practice on cross-examination of witnesses, whether it must be confined to the matters connected with and relating to the subjects about which the witness has been examined in chief, or whether he may be examined fully as to all matters material to the issues, has also been a fruitful field for discussion, and the adjudications are in no wise harmonious. The English courts follow the latter rule, while

the American courts largely follow the former.  This court, in *Woods, et al. v. Faraut,* 14 Okla. 171, stated the rule thus:

"On cross examination of a witness the party cross-examining should be confined to the matters concerning which the witness has been examined in chief."

While we adhere to the above rule as the one prevailing in the greater number of American courts and sanctioned by the supreme court of the United States in *Sawyer v. United States, supra,* it should not receive a narrow construction.  The rule should be so liberally construed as to allow on cross examinations any facts to be inquired into which are reasonably connected with or will tend to affect the testimony given in chief, or which will tend to affect the character or credit of the witness.  This must necessarily include impeaching questions, although they may relate to matters independent of the questions testified to in chief.  This is the rule as to cross-examination of other witnesses, and the same rule must be applied to persons on trial for crime who voluntarily become witnesses in their own behalf.  The course and extent of cross-examination are largely within the discretion of the trial court and are not subject to review except where the cross-examination has been carried to an extent and to matters which have clearly prejudiced the rights of the prisoner.

In *Rea v. Missouri,* 17 Wall. 532, 21 Law Ed. 707; it was said:

"When the cross-examination is directed to matters not inquired about in the principal examination, its course and extent is very largely subject to the control of the court in the exercise of a sound discretion, and the exercise of that discretion is not reviewable on a writ of error."

The same rule is stated in *Blitz v. U. S.* 153 U. S. 308, 38 Law Ed. 725; *The City of Guthrie v. Mollie Carey,* 15 Okla. 276; *Watkins v. U. S.* 5 Okla. 729; *Davis v. Coblens,* 174 U. S. 719, 43 Law Ed. 1147. The foregoing authorities conclusively settle two of the propositions contended for, adversely to the plaintiff in error. The most serious question presented is, did the court err in permitting the prosecution on cross-examination to ask the prisoner if he had not made certain statements and admissions inconsistent with his testimony, and which were asked for the purpose of impeachment if denied, and to show his criminality if admitted. These same admissions and confessions had been excluded by the court as not having been voluntarily made when offered by the prosecution in support of its case in chief. When the rule prevailed that a prisoner on trial for a crime was not permitted to speak or be heard in his own defense, the rule was established that no confession made by the prisoner should be introduced against him if the same was induced by fear, under duress, or through promise of leniency or immunity. A confession or admission made by the prisoner in order to be admissible against him must have been made voluntarily and freely. The strongest reason for the strictness of this rule was that the prisoner was not permitted to deny or explain the statements attributed to him, or to offer any explanations of the circumstances under which he was induced to make them. He was required to keep silent, and hence no evidence of admission, confession or inculpatory statements were allowed to be given in evidence against him, until it was made to appear to the court that the same were freely and voluntarily made. Now, the pris-

oner is permitted to testify the same as any other witness, if he voluntarily offers himself.  So long as he remains silent the reason for the rule of excluding confessions not voluntarily made, remains, but when he waives his privilege and becomes a witness for himself, the reason for the former rule ceases and he has the privilege and the opportunity to deny or admit any statement or admission attributed to him, and if he admits making any, he has the right to explain all the conditions and circumstances under which the same were given, and the jury can judge of the truthfulness. of this class of testimony the same as of any other.  We see no sound reason why a prisoner charged with a crime and who voluntarily becomes a witness in his own behalf should any longer be entitled to any special privileges which are not allowed to every other witness.  If any other witness has made statements out of court inconsistent with or contrary to his testimony given in court, he may be asked if he has not made such statements, and if he admit then he may explain the conversation and the circumstances and the inducements under which the statements were made.  If he deny having made the statements, then he may be impeached by showing that he did make them.  This being the rule to which every other witness subjects himself when he becomes a witness, we see no sound or plausible reason why the same rule shall not apply to the witness who is charged with a crime and who testifies in his own behalf.  He must weigh the consequences and determine the results before he goes upon the stand; he must be conscious of his vulnerable parts, and if he is unable to withstand the attacks to which every other witness for or against him must subject himself, he should maintain his silence and retain all his privileges.

In a well considered and lengthy opinion by Mr. Justice White, containing voluminous citations of authorities and a review of the history of the law relating to the admissibility of confessions, delivered in the case of *Bram v. United States,* 168 U. S. 532, 42 Law Ed. 568; it was said:

"In criminal trials, in the courts of the United States, wherever a question arises whether a confession is incompetent because not voluntary, the issue is controlled by that portion of the fifth amendment to the constitution of the United States, commanding that no person 'shall be compelled in any criminal case to be a witness against himself' * * * * *

"A brief consideration of the reason which gave rise to the adoption of the fifth amendment, of the wrongs which it was intended to prevent and of the safe guards which it was its purpose unalterably to secure, will make it clear that the generic language of the amendment was but a crystallization of the doctrine as to confessions, well settled when the amendment was adopted, and since expressed in the text writers and expounded by the adjudications, and hence that the statements on the subject by the text writers and adjudications but formulate the conceptions and commands of the amendment itself."

It is in this case made apparent that the purpose of the fifth amendment was to perpetuate by constitutional provision the principles of humanity and civil liberty which had been secured in the English courts after years of struggle, so as to implant them in our jurisprudence safe from the possibility of legislative change. In the application and interpretation of this fundamental rule it was universally held that a confession freely and voluntarily made, without compulsion or inducement, does not come within the consti-

tutional privilege, and the same may be given in evidence against the person making it.  Upon the other hand, it has been as universally held that a confession obtained through fear, duress, hope or inducement, was an involuntary statement and would not have been made except for the improper influences, and to permit such a confession to be given in evidence would be compelling the one making the confession to incriminate himself and violative of his constitutional privilege.  At common law, involuntary confessions were not excluded because such evidence was of an improper character or of any inherent wrong in making use of it as evidence, but they were excluded because of their uncertain, unsatisfactory and doubtful character.  It was not deemed safe to allow the life or liberty of a citizen to depend upon evidence of such doubtful weight and credit.

If it be true then, and in the light of the holding of the highest court in the nation it cannot be doubted, that the rejection of involuntary confessions is because of the constitutional rights of the accused not to be compelled to be a witness against himself, then by the decisions of the same high court when the prisoner voluntarily becomes a witness in his own behalf he waives this constitutional privilege and subjects himself to the same rules as to the examination of witnesses as any other witness. It seems that it must necessarily result that it is violative of no constitutional right or of the principles of civil liberty to require a prisoner while testifying as a witness in his own behalf, to answer any question, the answer to which might tend to impeach or discredit him.

No authorities were cited upon this last proposition,

and in our casual search we have found none that expressly decide this question. No doubt other courts have passed upon it, but we have searched out the result from well established principles and feel that the rule is sound and its application may prove beneficial, and that it can work no serious injustice.

We find no prejudicial error in the record. Upon the whole record it does not appear that any mistakes were made in convicting the defendant, and the court should not seek to discover any technical error to favor his release.

The judgment of the district court of Comanche county is affirmed at the costs of the plaintiff in error, and the district court is directed to proceed at once to execute the sentence.

Gillette, J., who presided in the court below, not sitting; all the other Justices concurring.