## WILLIE WILLIAMS v. STATE.

No. A-2834.   Opinion Filed March 3, 1917.

(163 Pac. 279.)

1.   **HOMICIDE—Dying Declarations—Sense of Impending Death.**
Where deceased was mortally wounded, and said to those around him, "I am growing awfully weak, and cannot last much longer," and then told them who shot him, and the circumstances under which he was shot, **held,** that this showed deceased was conscious of impending death; and that under these solemn conditions an oath could not have added verity to his statement; and that his statement was properly admitted as a dying declaration.

2.   **HOMICIDE—Instructions—Manslaughter.**   Where the accused placed a pistol to the head of his prostrated and wounded victim, who was begging him not to shoot him again, and deliberately said, "Dead men tell no tales, and dead policemen tell no tales," and then deliberately fired the fatal shot, **held,** that that act stripped the offense of every element of every crime except cold-blooded murder, and that the trial judge properly refused to confuse the jury by giving an instruction on manslaughter in the first degree.

3.   **EVIDENCE—Witnesses Not Produced in Court—Hearsay—Appeal.**   (a) Where a witness is not produced and sworn in court and no sort of effort is made to develop his testimony, this court will not surmise as to what he would or would not have testified had he been produced.

(b)   **Held,** that testimony of purported extrajudicial confessions of third persons, which, if made at all, were made without the sanctity of an oath, should be excluded as mere hearsay testimony.

*Error from District Court, Muskogee County;*
*R. P. deGraffenried, Judge.*

Willie Williams was convicted of murder, and he brings error. Affirmed.

*Dan M. Meredith,* for plaintiff in error.

*R. McMillan,* Asst. Atty. Gen., for the State.

BRETT, J.  In this case the plaintiff in error, who will be referred to as defendant, was tried and convicted of murder, and sentenced to suffer the death penalty. The record indicates that he was ably and diligently defended, and every possible right that he had faithfully guarded and protected; but both the law and the facts were against him, and, penned by the stern hand of justice, the verdict could not have been less.

Without going into the revolting details, the material facts are:  That about 2 o'clock on the morning of December 26, 1915, deceased, Sam Neal, who was a member of the police force of the city of Muskogee, intercepted the defendant shortly after he had left a hardware store with some stolen goods.  The defendant shot the deceased, partially disabling him, and then threw him down upon the street.  The deceased asked the defendant not to shoot him again, to which the defendant replied, "Dead men tell no tales, and dead policemen tell no tales," and then deliberately placed the pistol near his head and fired the fatal shot.  The deceased lived something like an hour and a half after receiving this mortal wound.  He was well acquainted with the defendant, and when his brother officers reached him he was perfectly conscious and rational, but stated to them that he was growing awfully weak, and "could not last much

longer," and then told them who shot him and how it occurred.

The defendant, immediately after committing this crime, left the city, presumably afoot, and boarded a train bound for Ft. Smith, Ark., at a water tank several miles out of Muskogee. But the officers along the line had been notified, and when the train reached Porum two officers entered the car, and one of them said to the defendant, "You killed a man at Muskogee last night," and he sprang up in a half stooping position with a pistol in his hand and said, "You are damn right I did," and attempted to shoot the officer, but before the pistol fired the officer seized his hand, and deflected its range, and the bullet went wild. After this pistol was taken from him, he drew another, which he also discharged in a futile effort to shoot the officer. When finally disarmed, he was again reminded by the officer that he killed a man at Muskogee last night, to which he replied, "Yes, and you turn me loose, and give me my gun, and I will kill another." One of the guns taken from him at Porum by the officers was the pistol of the then dead policeman, which he had taken from him after inflicting the mortal wound.

1. The defendant complains because the court permitted the statement of the deceased policeman to be introduced in evidence as a dying declaration, insisting that his statement, "I am growing awfully weak, and cannot last must longer," was insufficient in law to show that the deceased was, at the time of making the statement, conscious of approaching death. But with this contention we cannot agree. This court has repeatedly passed upon this question; and in *Morris v. State,* 6 Okla. Cr. 41, 115

Pac. 1035, Judge Doyle, speaking for the court, lays down the sound, sensible, and correct rule, saying;:

"It is essential to the admissibility of dying declarations, and is a preliminary fact to be proved by the prosecution, that they were made under a sense of impending death. This may be made to appear from what the injured person said, or where from the nature and' extent· of his injuries it is evident that he must have known that he could not survive. It is sufficient if it satisfactorily appears that they were made under the sense of impending death, whether it be directly proven by the express language of the declarant, or be inferred· from his evident danger,* or the opinions of the medical attendants, stated to him, or from other circumstances of the case, such as the length of time elapsing between the making of the declaration and his death, and the fact that the declarant was so weak that he could not sign his name and so affixed his mark, all of which are resorted to, in order to ascertain the state of declarant's mind."

And in *Offitt v. State*, 5 Okla. Cr. 49, 113 Pac. 554,. Judge Armstrong tersely states the rule, saying:

"A declaration made by deceased, clearly without premeditation or design, when the record shows he is mortally wounded, and he has made statements showing that he realizes his condition, is properly admitted as a dying declaration." *Blair v. State*, 4 Okla. Cr. 359, 111 Pac. 1003; *Ryan v. State*, 8 Okla. Cr. 623, 129 Pac. 685; *Hawkins v. U. S.*, 3 Okla. Cr. 651, 108 Pac. 561.

Under the facts in this case there can be no question of the admissibility of the statement of the deceased. Death was then upon him, and, realizing it, he stated to his fellow officers, "I am growing awfully weak, and cannot last much longer," and within an hour from that time he was in eternity; and under these solemn conditions an oath could not have added verity to his statement.

2. The defendant also insists that the court should have given a requested instruction on manslaughter in the first degree. But there was not even a suggestion of manslaughter in the first degree in this case. The defendant in the trial of this case denied committing the crime; denied having admitted it to the arresting officers, and under his theory he was an innocent man. But under the statement of the dying officer, which the jury had every reason on earth to believe, he was guilty of a foul, atrocious, and cold-blooded murder; he killed his victim to seal his lips. But an overruling Providence stayed the hand of death until the tongue he intended to silence might speak. And when he placed the gun to the head of his wounded victim, who was begging him not to shoot him again, and deliberately said, "Dead men tell no tales, and dead policemen tell no tales," and then deliberately fired the fatal shot, that act stripped the offense of every element of every crime except cold-blooded murder. And the judge was eminently correct in refusing to confuse the jury by an instruction on manslaughter in the first degree. *Fritz v. State*, 8 Okla. Cr. 342, 128 Pac. 170; *Yarbrough v. State*, ante, p. 140, 162 Pac. 678.

3 (a) The defendant further complains because the court, he says, refused to allow him to introduce a couple of irresponsible jailbirds, who, he stated, would testify that another person, not on trial, told them he committed the crime. But the record shows that these witnesses were not produced in court, or placed upon the witness stand, and no sort of effort was made to develop their testimony, and no proper tender of their evidence was ever made. And this court cannot pass upon the question of what a witness' testimony might have been, or whether or not it might have been competent, when such

witness was not produced in court, or sworn, or placed upon the witness stand, and no sort of effort made to develop his evidence; for the reason that this court cannot assume to surmise as to what his testimony might or might not have been if he had been produced. To permit this kind of practice would be to invite fraud and imposition upon the courts.

(b) Besides, in *Dykes v. State*, 11 Okla. Cr. 602, 150 Pac. 84, it is held that testimony of purported extrajudicial confessions of third persons, which, if made at all, were made without the sanctity of an oath, should be excluded as mere hearsay testimony, the court saying:

"A defendant who is being tried on a criminal charge is not entitled to introduce proof which has for its purpose the establishing before the jury the fact that some other person has confessed that he committed the crime, and that the defendant had nothing to do therewith and was not concerned therein"

—and in support of this position citing and quoting *Donnelly v. United States*, 228 U. S. 243, 33 Sup. Ct. 449, 57 L. Ed. 820, Ann. Cas. 1913E, 710, and numerous other authorities.

We think no prejudicial error was committed in the trial of this case, and that the facts justified the judgment and sentence. The judgment is therefore affirmed.

It is therefore ordered, adjudged, and decreed that the warden of the state penitentiary at McAlester proceed to carry into execution the judgment and sentence of the district court of Muskogee county, in accordance with the death warrant issued thereon; and the 13th day of April, 1917, is designated as the date for the execution of said sentence.

DOYLE, P. J., and ARMSTRONG, J., concur.