## JACK MATHEWS v. STATE.

### No. A-2942.   Opinion Filed Oct. 28, 1919.

(184 Pac. 468.)

1. **HOMICIDE—Self-Defense—Evidence.**  Where in a homicide case self-defense is pleaded, specific acts of violence on the part of the deceased towards others than the defendant may, if known to the defendant prior to the homicide, be shown in evidence.

2. **APPEAL AND ERROR—Requested Instructions—Reversible Error.**  Paragraphs of instructions given and excepted to by the defendant must be considered in connection with all of the instructions given; and, unless when so considered prejudicial error appears, the paragraphs of the instructions complained of do not necessarily constitute reversible error.

3. **HOMICIDE—Dying Declarations—Admissibility.**  When the deceased on the day he was shot, and within a very few hours thereafter (and who died the next day from the effects of said shot), told a rabbi to pray for his (deceased's) soul, saying, "I know I will die," that was a sufficient predicate to show that statements made by the deceased to such rabbi as to how such difficulty resulting in his being shot occurred were made under a sense of impending death, and such statements of the deceased are properly admitted in evidence.

*Appeal from District Court, Creek County; Ernest B. Hughes, Judge.*

Jack Mathews was convicted of manslaughter in the first degree, and he appeals. Reversed and remanded.

*H. B. Martin* and *A. F. Moss,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

ARMSTRONG, J. The plaintiff in error, Jack Mathews, hereinafter referred to as defendant, was informed against for the murder of Sam Lyons, convicted of manslaughter in the first degree, and sentenced to be confined in the penitentiary at McAlester for a term of six years. To reverse the judgment rendered, he prosecutes this appeal.

The undisputed evidence is that the defendant and deceased had a disagreement about some meters that were in a rooming house purchased by the defendant from the deceased; that the defendant went to a furniture store conducted by the deceased in the city of Sapulpa, and the defendant and deceased engaged in a quarrel, in which profane language was used, and both parties became angry; that the defendant left the store and stopped on the sidewalk in front of the store; that the deceased armed himself with a pistol and went out to where defendant was; and that the defendant shot the deceased, from the effects of which said shot the deceased died the following day; that the arm of the defendant, shortly before the homicide, had been broken, and that at the time of the homicide the defendant had not recovered from said disability, and that the deceased was a larger man than the defendant.

The evidence was in sharp conflict as to what occurred between the said deceased and defendant when they met on the sidewalk in front of said store, there being evidence on the part of the state tending to show that immediately

prior thereto the defendant invited the deceased to come out of his store, and stating what defendant would do to him if he came out on the sidewalk; that the deceased picked up a gun and went to where the defendant was, and they engaged in a difficulty in which the deceased hit the defendant on the head with the gun, and that the defendant then shot the deceased; that the evidence on the part of the defense tended to show that prior to the homicide the defendant had legal authority to carry a pistol; that the defendant had known the deceased some eight or nine years, and during said time their relations had been friendly up to the time of the homicide; that after a controversy with the deceased in his store the defendant walked out of said store and stopped in front of said store, and the deceased came out with a gun in his hands, and with it hit the defendant on the head several times and staggered him; that then the deceased turned the gun around in his hand, with the barrel pointing toward the defendant, and that the defendant, thinking the deceased was going to shoot him, immediately drew his pistol and shot the deceased; and that the defendant did not invite the deceased to come out to the sidewalk where the defendant was.

The evidence further shows that the deceased was seen in a hospital at Tulsa, shortly after he was shot by defendant, and asked a rabbi present "to pray for his soul," saying "I know I am going to die," and immediately thereafter stated in the presence of said rabbi and others in response to a question as to how the difficulty occurred, that Mr. Mathews called him over the phone and asked if he took out some meters; that he said he did, and that Mr. Mathews came over to the store and abused him and called him all kinds of vile names, and invited him outside;

that he picked up a gun and. followed him outside; that he hit the defendant with the gun, and the defendant shot him. The defendant objected to the admission of the statements made to said rabbi and others upon the ground that a proper predicate had not been laid showing that the same were dying declarations. The court overruled the objec-· tion, and the defendant excepted. The defendant offered to prove by himself "that prior to the homicide he heard from persons who claimed to have seen a difficulty between the deceased and Dr. Bone, a physician living in the city of Sapulpa, that the deceased had attacked Dr. Bone with a common ax and had run him away from his house," and also offered to prove by himself that he knew, by having heard, of an assault made by the deceased upon a man by the name of S. N. Terry, a blacksmith who lives in Tulsa, "in which assault the deceased, by use of a deadly weapon, had run Mr. Terry out of his blacksmith shop." The court excluded said offered testimony, and the defendant excepted.

The defendant objected, and excepted severally to four paragraphs of the instructions given the jury by the court, which said paragraphs we deem unnecessary to set out.

The defendant complains that the court erred in admitting in evidence, as dying declarations, the statements made by the deceased, after he was shot, to said rabbi and, others as to how the difficulty in which he was shot occurred, and insists that a proper predicate was not laid for same, because it was not shown that said statements were made by the deceased under the sense of impending death, and this contention we think not well taken. The statement, "I am going to die," with the request to a rabbi that his soul be prayed for, together with the physical condition of the deceased at the time, and his early death thereafter from

the wound inflicted upon him by the defendant shows that at the time said statements were made the deceased was under the sense of impending death, and was a sufficient predicate for the admission of said statements as dying declarations, and the court did not err in admitting the same. *Paden v. State,* 13 Okla. Cr. 585, 165 Pac. 1155; *Williams v. State,* 13 Okla. Cr. 189, 163 Pac. 279.

The defendant also complains that the court committed reversible error in excluding the offered evidence of the defendant of specific acts of violence on the part of the deceased toward others than the defendant, and with this contention we are in accord, and think that the trial court committed prejudicial error in excluding the evidence offered of said specific acts of violence.

In *Mulkey v. State,* 5 Okla. Cr. 75, 113 Pac. 532, it is held:

"In a homicide case, where the defense is justifiable homicide in self-defense, evidence was offered on behalf of the defendant to prove particular instances of violence and quarrelsome conduct on the part of the deceased, these acts of violence and misconduct being known to the defendant. Held competent for the purpose of showing the disposition of the deceased to become violent without provocation, and as tending to show his condition of mind, and violent temper on such occasions, and his disposition to use deadly weapons."

The holding in *Mulkey v. State, supra,* is in accord with the holding in *Sneed v. Territory,* 16 Okla. 641, 86 Pac. 70, 8 Ann. Cas. 354, which said case is quoted from with approval in *Mulkey v. State, supra.*

We have carefully considered the paragraphs of the instructions given, and excepted to by defendant, and are unable to see that the defendant has discharged the bur-

den that is upon him "to clearly point out error in any one of said paragraphs complained of, and support the same with argument and authority." *Penn v. State,* 13 Okla. Cr. 367, 164 Pac. 992, L. R. A. 1917E, 668.

The paragraphs of the instructions complained of must be considered in connection with all of the instructions given; and, when so considered, we are of the opinion that it is not apparent that the giving of said paragraphs "has probably resulted in a miscarriage of justice, or injuriously affected the substantial rights of the defendant." *Penn v. State, supra; Nutt v. State,* 8 Okla. Cr. 266, 128 Pac. 165.

For the error pointed out, the judgment of the trial court is reversed, and the cause remanded.

DOYLE, P. J., and MATSON, J., concur.