## C. C. TATE v. STATE.

No. A-6823.   Opinion Filed Oct. 5, 1929.
Rehearing Denied Nov. 2, 1929.
(281 Pac. 820.)

Wallace & Wallace, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

CHAPPELL, J.   The plaintiff in error, hereinafter called defendant, was prosecuted in the district court of Creek county on a charge of murder, the jury finding him guilty of manslaughter in the second degree and fixing his punishment at imprisonment in the state penitentiary for 2 years.

Defendant was city marshal of the town of Mannford in Creek county and claimed to be a deputy sheriff. He at the time of the commission of this homicide was patrolling the state highway, known as the Albert Pike highway in the vicinity of Mannford. The deceased was a young man about 21 years of age who had gone to Tulsa with two of his brothers and three other boys on April 13, 1926, in two Ford roadsters. They were returning to their homes in the neighborhood of Yale in Payne county when this homicide occurred. The theory of the state seems to have been that the deceased and the other boys with him were at most engaged in the commission of a misdemeanor in driving their automobile in a reckless manner and at a reckless rate of speed, and that the defendant was not legally warranted in firing at the driver of the car in order to make arrests or to stop the flight of the parties.

The theory of the defendant was that the deceased and his companions were engaged in the commission of a felony by driving their automobiles on the public highway while intoxicated, and that the defendant, being warned of their approach and of their intoxicated condition, attempted to intercept them and arrest the deceased and his companions, and that the deceased and his companions fled from the officer, and that the officer fired at a rear tire of the car the deceased was riding in, the bullet struck the pavement and glanced upward and struck the deceased, killing him. The defendant contends that he was in the legal discharge of his duty as a public officer and that the killing was accidental, though justified by all the facts in the case. The issue made by the state and the issue made by the defendant were submitted to the jury by the court under proper instructions and the jury found the issues of fact against the defendant.

Defendant complains that the court erred in giving instructions Nos. 4, 5, 10, 11, 12, 13, 14, the first, second and third paragraphs of No. 15, and No. 16. It was not mandatory that the trial judge state affirmatively defendant's theory of the case in any particular instruction. It was sufficient if the court in the general charge covered the defendant's theory of the case. Instructions 12, 13, and 14, considered together, apply the theory of law of the defense to the evidence of the defense in this case. It is well established that the instructions must be considered and construed as a whole. The charge is not to be condemned because a single paragraph fails to contain all of the law of the case, but the entire charge is to be considered as if it were but a single statement of law, and if, when so considered and construed, it fully and faiirly covers the law of the case, it is sufficient and neither party may justly complain of the incompleteness of any paragraph thereof. McKenzie v. State, 11 Okla. Cr. 554, 149 Pac. 911; Rogers v. State, 15 Okla. Cr. 434, 183 Pac. 41; Mathews v. State, 16 Okla. Cr. 446, 184 Pac. 468; Cole v. State, 18 Okla. Cr. 430, 195 Pac. 901; Ned v. State, 29 Okla. Cr. 389, 233 Pac. 1096; Guerin v. State, 43 Okla. Cr. 172, 277 Pac. 601.

The defendant next contends that the court erred in refusing to give defendant's requested instructions Nos. A, B, and C. It was not error for the trial court to refuse the requested instructions of the defendant where the general instructions fairly covered the law of the case. Manning v. State, 7 Okla. Cr. 368, 123 Pac. 1029; Hawkins v. State, 24 Okla. Cr. 82, 216 Pac. 166; Hamilton v. State, 38 Okla. Cr. 62, 259 Pac. 168.

The defendant next complains that the court erred in admitting the evidence of the witness Ralph Morey and

one Burt, concerning certain experiments made by them in firing the pistol used by the defendant and loaded with leaden bullets in the public highway at approximately the point where the evidence showed this killing occurred. These tests were made to indicate the height to which the leaden bullets would ricochet when fired from said gun at said pavement at different distances from a canvas covered board set upright upon the pavement. The particular objection now urged to the admission of the testimony of these witnesses was that they were not experts in the use of firearms, and that the experiments were not made under like conditions on like materials with similar apparatus and under like circumstances as existed at the time of the homicide. The witness Morey was permitted to testify without any objection having been made by defendant's counsel. It was not until the witness Burt was testifying that counsel first objected to this line of evidence. The witness Morey detailed the conditions under which these experiments were made; the witness Burt giving the result of such experiments as taken down by him at the time. All of this evidence was introduced in rebuttal. The defendant had called one Harry Brill, an alleged rifle expert, who testified in answer to certain hypothetical questions put to him by defendant's counsel as to the probable results of the courses of bullets fired into a pavement from a pistol at different distances, and also testified to the results of certain experiments made by him with a pistol on a pavement in Tulsa county many miles from the scene of this homicide. Counsel for the defendant first opened the door to an investigation of this kind and laid the foundation for rebuttal evidence of the state along the same lines. Neither the witness Morey nor Burt were asked or expressed any opinion as to how the defendant shot the deceased; that is, whether the bullet

that killed the deceased, in their opinion, ricocheted from the pavement or went directly from the pistol into and through the back of the automobile and into the back of the neck of deceased. These witnesses were only permitted and only testified to the facts of the conditions under which these tests were made and identified the physical evidence of the results of such tests. The evidence given by them was not the opinion evidence of experts. This was experimental and not expert evidence and the inferences to be drawn from the physical results of such experiments introduced in evidence were left to the jury and not to the witnesses.

In Irby v. State, 18 Okla. Cr. 671, 197 Pac. 526, this court in passing upon similar questions said:

"Evidence of experiments made out of court, and not in the presence of the jury, is admissible upon the same principle that the experiments themselves may be conducted in the jury's presence. * * * Where the competency of evidence of experiments depends upon similarity of circumstances and conditions, the question is one for the court to determine. * * * If the evidence shows that the experiments were made under circumstances approximately similar to those which surrounded the original transaction and such experiments would serve to shed any light upon that transaction, it would be admissible, although such experiments might not have been made under exactly similar conditions as attended the original transaction. The results of such experiments are not conclusive, but are mere circumstances to be considered with the other evidence in the case, and are to be weighed and determined by the jury."

The state introduced the physical results, the facts of these experiments, and left the conclusion and inferences to be drawn from such demonstrative evidence for the jury, because the results of such experiments could be

determined without special skill and the testimony given by Morey and Burt did not amount to expert evidence. The defendant assigns numerous other grounds of error, but they are all without sufficient merit to justify special discussion in this opinion.

It is well settled in this state that a peace officer without a warrant may make an arrest for a felony where the same is being committed in the presence of the officers or where the felony has actually been committed and the officer has reasonable and probable grounds for believing the persons he attempts to arrest have committed a felony, or where, having committed a felony, they are fleeing from arrest, the officer has a right to use all reasonable force necessary to make the arrest, even to the extent of shooting and killing. Section 2471, C. O. S. 1921; Altizer v. State, 21 Okla. Cr. 229, 205 Pac. 1106; McDaniels v. State, 36 Okla. Cr. 313, 253 Pac. 1041.

In the case of Ex parte Finney, 21 Okla. Cr. 103, 205 Pac. 197, this court said:

"Peace officers, having, or assuming to have, authority to make arrests without a warrant, must exercise such authority with discretion, as the law directs, so as not to jeopardize the lives and lawful pursuits of innocent people. Peace officers are as much amenable to the law as other persons, and they must not use their official authority as a cloak to violate the law. Even where a suspected person has committed a felony, an officer will not be justified in taking life where the arrest can be made without violence.

"Where officers or others have authority to make arrests upon suspicion that a felony has been committed, to claim protection under the law there must be reasonable and probable grounds for that suspicion. Suspicion without cause can never be an excuse for such action. The two must both exist and be reasonably well founded. A peace officer will not be justified in killing a person sought to

be arrested who fled from him, where the officer acted on a mere indefinite suspicion, and no felony had in fact been committed."

"Where officers or others have authority to make arrests upon suspicion that a felony has been committed, to claim protection under the law there must be reasonable and probable grounds for that suspicion. Under such circumstances the officer must not act arbitrarily, but must exercise his discretion in a lawful manner, using all reasonable means to avoid mistakes."

In the case at bar the evidence discloses that the young man killed was not driving the car, but was merely a passenger. The evidence was conflicting as to whether the deceased had taken a drink and as to whether or not he was aiding and abetting the driver of the car in the commission of a felony. The theory of the state that the killing was illegal and unauthorized, and the theory of the defendant that the parties were in the commission of a felony and that defendant only used the necessary force to make the arrest and that the killing was accidental, were properly submitted to the jury by the instructions of the court. The jury found the defendant guilty of manslaughter in the second degree and fixed his punishment at imprisonment in the state penitentiary for two years.

This appears to be a case where a public officer exceeded his authority and himself violated the law in his attempt to enforce it. This court is anxious to aid public officers of the state in the discharge of their legal duties, and will do so whenever possible; but where an officer sworn to enforce the law himself violates it, the fact that he is an officer does not entitle him to any more consideration at the hands of the court than if he were only a private citizen. If an officer violates the law he must be punished the same as any other citizen.

The verdict of the jury being supported by sufficient evidence, and the errors of law complained of not being fundamental, the cause is affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.