J. H. BROCK v. STATE.

No. A-8641. March 30 and April 2, 1934.
Rehearing Denied, April 14, 1934.
(32 Pac. [2d] 88.)

T. M. Robinson, Stansell Whiteside, and George L. Zink, for plaintiff in error.

J. Berry King, Atty. Gen., Smith C. Matson, Asst. Atty. Gen., and D. R. Rutherford, Co. Atty., for the State.

CHAPPELL, J. The plaintiff in error, J. H. Brock, was convicted in the district court of Jackson

county of the crime of manslaughter in the first degree in the killing of W. C. Ernest, and his punishment fixed by the jury at imprisonment in the state penitentiary for a term of 20 years.

Defendant makes no contention that the evidence is insufficient to support the verdict of the jury, but seeks a reversal because of alleged errors occurring during the trial and in the proceedings in the district court after the trial.

It is first contended the trial court erred in permitting the state to introduce certain irrelevant, incompetent, and immaterial evidence.

This assignment relates to the testimony of one James N. Fitz, state bank examiner, who testified on behalf of the state that he had made an examination of defendant's bank immediately after this killing occurred.

The court permitted Fitz to testify, over the objection and exception of defendant's counsel, to certain shortages and irregularities in defendant's bank, which culminated in a shortage of $5,191 in the accounts of the bank at the time Ernest was killed. It is contended this evidence tended to establish a collateral offense, and in view of the fact that defendant admitted the killing, it was not necessary for the state to prove motive, and, even if it was competent for the state to prove motive, the court should not have permitted the state to introduce details of the alleged defalcations and irregularities.

This evidence being competent to prove motive, the mere fact that it tended to establish a collateral offense would not make it incompetent.

Beginning with State v. Rule, 11 Okla. Cr. 237, 144 Pac. 807, this court in cases too numerous to cite has held

that in proving motive, system, plan, or scheme of criminality, the state may introduce evidence similar to that complained of in the case at bar. While it was not necessary for the state to prove motive, yet it could not be deprived of the right to introduce any evidence that was competent in the case, and proof of motive is always competent.

It is next contended the court erred in refusing to admit certain alleged competent and material evidence offered in behalf of defendant.

This assignment relates to the refusal of the trial court to permit defendant to introduce certain testimony relative to the violent and turbulent character of deceased, as evidenced by particular and specific acts of violence on the part of deceased.

The trial court permitted defendant, while testifying, to detail certain alleged conversations which he had with deceased, and concerning which defendant swore the deceased informed him in detail of certain acts of violence and threats made and committed by deceased on third persons, in the absence of defendant, and which defendant did not witness or have knowledge of other than that told him by deceased. But the court refused to permit defendant to introduce these alleged third persons to give their version of such alleged acts of violence and difficulties on the part of the deceased, which they had witnessed or known.

Defendant contends this evidence was admissible under the authority of Sneed v. Territory, 16 Okla. 641, 86 Pac. 70, 8 Ann. Cas. 354; Mulkey v. State, 5 Okla. Cr. 75, 113 Pac. 532; and Mathews v. State, 16 Okla. Cr. 466, 184 Pac. 468.

None of these cases hold that evidence of this character, unknown to defendant prior to the commission of the homicide, is admissible.

The question before the jury was not whether the stories told by deceased to defendant of his quarrels, brawls, and difficulties were true, but was: Did defendant believe deceased had committed such acts detailed to him and by reason thereof believe deceased was a dangerous and violent man, and, acting on such belief, commit the killing in his own self-defense? If he believed what deceased told him, it was immaterial whether it was the truth or a lie for the purposes of the trial. Hence, the mere fact that defendant might have shown by the proffered testimony that deceased had told him the truth could not have affected the issue in the case.

It is not error for the court to refuse to permit deceased to be tried upon the merits of the facts as to each alleged act of misconduct upon his part by the testimony of witnesses who had never detailed any of this evidence to defendant prior to the commission of the homicide.

It is next contended the court erred in permitting the state in rebuttal to introduce evidence of the good character of deceased for being a peaceable and law-abiding citizen, since there had been no attack made upon the character of deceased by defendant.

The difficulty about this contention is that there was a specific attack made by defendant in his testimony upon the character of deceased as being a peaceable and law-abiding citizen.

Defendant after detailing the alleged conversations with deceased, in which deceased told him about seven separate and distinct acts of violence, immoral conduct,

and threats with a gun on the part of deceased against third persons, testified:

"Q. Now, Mr. Brock, what impression did that create upon your mind as to the kind of man Mr. Ernest was as to being a bad and dangerous character? A. I knew he was a bad and dangerous man from what he had told me. Q. State whether or not that had any effect upon you? I believe you stated that you thought you were in danger at the time you fired the shot. A. Yes, that came into my mind as quick as a flash, all these things."

In Cody v. State, 23 Okla. Cr. 236, 214 Pac. 201, this court said:

"It is permissible for the state to offer evidence of the good character of the deceased where evidence that he was of a turbulent or quarrelsome disposition is offered in support of defendant's claim of justification."

In Coulson v. State, 48 Okla. Cr. 206, 291 Pac. 152, 153, this court said:

"Where a defendant introduced evidence tending to show the turbulent, violent, and quarrelsome character of the deceased, it is, of course, competent for the state in rebuttal to show good character in these particulars."

The defendant opened the door for introduction of evidence in rebuttal of the good reputation and character of the deceased for peace and quietude.

It is next contended the court erred in permitting the cross-examination of defendant as to whether or not he had refused to answer questions after his arrest and while in custody.

Defendant testified he had no recollection of anything that occurred immediately preceding the homicide and for more than twenty-four hours after he was placed in jail.

The county attorney asked defendant if he did not remember he was taken first to the county attorney's office, and he answered:

"I don't know. Q. You knew enough to tell him you would tell your story at the proper time, didn't you? A. I don't know. Q. You know that you remember the conversation with the county attorney, don't you? You know that you refused to talk to him and told him you would tell your story at the proper time?"

This question was objected to by defendant and overruled by the court.

"A. I don't remember anything about it."

The cases cited by defendant to support this assignment bear upon the question of binding the defendant by remarks of some third person. But where defendant takes the witness stand, his right to remain silent on cross-examination is waived, and he subjects himself to the same nature of cross-examination as any other witness. Harold v. Territory, 18 Okla. 395, 89 Pac. 202, 10 L. R. A. (N. S.) 604, 11 Ann. Cas. 818; Graham v. State, 28 Okla. Cr. 266, 230 Pac. 763; Davis v. State, 35 Okla. Cr. 156, 249 Pac. 164; Radney v. State, 36 Okla. Cr. 240, 253 Pac. 913.

The only right defendant has to refuse to answer after he takes the witness stand is to refuse to answer any question which might incriminate him as to some other crime. When the defendant as a witness testified he had no remembrance of any of the acts occurring immediately prior to the homicide and until nearly twenty-four hours afterward, the state had a right on cross-examination to call his attention to certain matters and ask if he did not remember them, for the purpose of showing his statement of lack of remembrance was untrue and to affect his credibility as a witness.

This cross-examination does not come within the rule of binding the defendant by silence as to statements made by third persons in his presence, but is controlled by the rule that statements and conduct of a witness contrary to and inconsistent with his testimony may be inquired about on cross-examination.

Finally, it is contended the court erred in permitting the state to introduce photostatic copies of a certain letter and envelope.

This letter and envelope was addressed to L. J. Davis, a state bank examiner in Texas, occupying the same position there that deceased occupied in Oklahoma at the time of the homicide. The state had introduced evidence that defendant had at different times operated and been employed in state banks in Texas, and that defendant had operated a state bank at Walnut Grove, Tex., and that L. J. Davis was examiner for such bank at the time defendant operated it. The state as a foundation for the introduction of these copies proved that they were in the handwriting of defendant, that the originals were in existence and in the possession of Davis, at Marlin, Texas, who was a resident of that state and out of the state of Oklahoma at the time of trial, and that the state could not compel him to attend the trial and bring the originals of these exhibits.

The theory of the state was that this letter tended to show malice on the part of defendant as against a class and also to show motive. The state had already shown, through Barnett and other witnesses, that defendant stated he would kill the bank examiner who attempted to close his bank; that a few moments before the homicide was committed he had repeated his threat to Barnett over the phone, hung up the receiver, and very shortly after-

ward killed deceased. To some extent it might be said this letter was cumulative and tended to support this evidence of the state, but to say the least it was far-fetched and, standing alone, would not establish malice against a class. The exhibits were inadmissible, but under the proof of the state defendant could not have been prejudiced thereby. For that reason the admission of the exhibits was not reversible error.

Under the evidence of the state, defendant was undoubtedly guilty of premeditated murder and should have been found guilty on this evidence. For reasons unknown and unexplained, the jury was merciful and he escaped with 20 years.

There being no fundamental error in the record, the cause is affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.

DAVENPORT, J. (specially concurring). I concur in the conclusion reached that the case should be affirmed, but do not concur in the holding of the majority of the court that the testimony of the witness Fitz, who testified that after the killing he examined the defendant's bank and found a shortage in the funds of the bank, was admissible. This was introduced by the state on the theory that it tended to establish a motive for the killing. The state had already shown by the witness Barnett, the Bank Commissioner, that the defendant had told him he would kill any one who closed his bank. The defendant relied upon self-defense for his acquittal. The evidence of the witness Fitz as to the condition he found the bank assets in after the killing was inadmissible, and it was error for the court to permit it to go to the jury. However, under the facts and circumstances in this case it was not such an error as would justify a reversal.

I disagree with the majority of the court in its reasoning and holding that the admission of the photostatic copy of the letter alleged to have been addressed to a man by the name of L. J. Davis, a bank examiner in Texas, claimed to have been written by the defendant, in which it is alleged the defendant made threats against Davis was not prejudicial. This photostatic copy of the letter was inadmissible under any rule of evidence that I have been able to find. The state had shown by the witness Barnett that the defendant had told him he would kill any one who closed his bank. Barnett's testimony showed a motive, if any existed. The defendant relied upon self-defense, claiming he was assaulted by the deceased and fired the shot in his necessary self-defense, but the question of the admission or rejection of this photostatic copy of this letter is not a question of motive, and there was no competent proof that the original letter, from which it was claimed the photostatic copy was made, had been received through the mail by L. J. Davis, or that L. J. Davis was the party that had the photostatic copy made. A sufficient predicate was not laid for the introduction of the original letter, to say nothing of a photostatic copy.

The fact that some witness goes into court and testifies he went into a foreign state and there read a letter and got a photostatic copy of it and brought it back with him and asked that it be used as evidence is a departure from the rules of evidence, a dangerous precedent to establish by this or any other court. The life and liberties of those charged with crime are too precious, and the defendant, though guilty as the record in this case shows him to be, was entitled to be convicted by competent testimony.

It is perfectly clear from the verdict rendered by the jury that it did not give very much weight to the evidence

of the bank examiner as to what he gathered from an examination of the bank books, which examination was made after the killing. Nor did the jury seem to give very much weight to the photostatic copy of the letter which the court permitted to be introduced in evidence, over the objection of the defendant.

I insist the photostatic copy of the letter was inadmissible and was an error, but under the evidence in this case and the verdict of the jury I do not think the errors herein complained of are sufficient to warrant this court in reversing this case. All the competent testimony clearly shows there was no justification for the killing.