WILLIS TUGGLE v. STATE.

No. A-3658.    Opinion Filed Dec. 24, 1921.
(209 Pac. 187.)

(Syllabus.)

1. **Appeal and Error—Conviction—Sufficiency of Evidence.** A judgment of conviction will not be set aside solely upon the ground of insufficient evidence if there is any credible evidence in the record which, if believed, will support the judgment.

2. **Jury—Opinion of Juror Which Will Yield Not Disqualification.** The trial court's refusal to sustain a challenge to a juror for cause will not be disturbed by the appellate court where it appears from the examination of such juror that he had formed an opinion solely from hearsay and newspaper reports, and upon examination stated that his opinion would readily yield to the evidence, and that he was positive he could disregard the opinion and be governed by the evidence and the instructions of the court.

3. **Homicide—Evidence—Defendant's Threats to Show Malice.** Record examined, and held, motion to strike certain evidence not well taken.

4. **Appeal and Error—Harmless Error—Admission of Evidence in Rebuttal.** For reasons holding the admission of certain evidence in rebuttal not sufficiently prejudicial to require a reversal of the judgment, see body of opinion.

Appeal from District Court, Sequoyah County; E. B. Arnold, Judge.

Willis Tuggle was convicted of manslaughter in the first degree, and appeals.     Affirmed.

Frye & Frye and McCombs & McCombs, for plaintiff in error.

S. P. Freeling, Atty. Gen., and E. L. Fulton, Asst. Atty. Gen., for the State.

MATSON, J.    This is an appeal from the district court of Sequoyah county,   wherein Willis Tuggle, plaintiff in error, hereinafter referred to as defendant, was on the 19th day of May, 1919, convicted of the crime of manslaughter in the first degree, and his punishment assessed by the court at a term of 25 years' imprisonment in the state penitentiary at McAlester.

Defendant killed one Joe Williams on the 8th day of April, 1919.   The killing occurred where the defendant was repairing a rail fence between his premises and those of the deceased. Williams, at a point where said fence joined the public highway about three-quarters of a mile north of the town of Brent, in Sequoyah county.   Williams and a young man by the name of Jesse Jackson were traveling along the highway in the afternoon of that day on their way to Brent and came to the place where Tuggle was working on his fence.   A dispute arose between Tuggle and the deceased concerning the line on which Tuggle was building the fence, which dispute led to some argument between the parties, the deceased finally calling the defendant a God damned liar.   Whereupon, according to the state's evidence, the defendant fired four shots from his automatic pistol into the body of the deceased, at a time when the deceased was leaning on the fence with his arms folded in front of him.   The evidence on the part of the defendant and his 11 year old son, who was present at the time, is to the effect that the deceased called him a God damned s——of a b——,

and at the same time reached back as though to pull a weapon from his pocket, and the defendant told him not to do that, but, the deceased continuing to make an effort as if to draw a weapon, the defendant, to use his own language, "started his gun to working." According to the testimony of the attending physicians, who made an examination of the body of the deceased after he was removed to his home, there were five bullet holes in his body, three of them in his left breast in the neighborhood of the heart, which were necessarily fatal, one in his right arm and one in his left arm.

After the shooting the defendant ran away and remained a fugitive until the third day following, when he voluntarily surrendered himself to the sheriff. There is evidence on the part of the defendant that the deceased was drinking at the time of the killing, and also evidence to the effect that the deceased had the reputation of being a dangerous and quarrelsome man when under the influence of intoxicants. The evidence is conflicting as to whether the defendant was intoxicated at the time of the killing. Some of the witnesses who saw him just before the time of the killing said they could not tell whether he was intoxicated or not. There is also some evidence to the effect that the deceased's general reputation as a peaceable and law-abiding citizen was good, and there is also some rebuttal evidence to the effect that the defendant's general reputation as a peaceable and law-abiding citizen was good.

It is contended that the evidence is insufficient to sustain the judgment. The evidence is to some extent conflicting. However, the evidence on the part of the state indicates that the defendant shot the deceased at a time when the deceased was leaning upon the fence with his arms folded, making no effort in any way to kill the defendant, or to inflict serious bodily injury upon him. According to an eyewitness, the defendant shot the deceased as soon as the deceased had applied

a vile epithet to the defendant. Under such circumstances the killing was clearly not justifiable, and the state's evidence, if believed, is amply sufficient to support the verdict and judgment. This court has repeatedly held that the judgment of conviction will not be set aside solely upon the ground of insufficient evidence if there is any credible evidence in the record which, if believed, will support the judgment.

It is next contended that the trial court erred in overruling the defendant's challenge for cause to certain jurors on the ground of having formed and expressed an opinion as to the guilt or innocence of the defendant.

We have carefully examined the record in respect to this assignment. Whatever opinion the jurors had was formed from hearsay, and the reading of newspaper reports of the tragedy. Upon examination these jurors stated that their opinions would readily yield to the evidence, and that they could give the defendant a fair and impartial trial, and would be governed by the evidence and the instructions of the court. The trial court did not abuse its discretion in overruling such challenge. Littrell v. State, 21 Okla. Cr.—, 209 Pac. 184; Gentry v. State, 11 Okla. Cr. 355, 146 Pac. 719; Pope v. State 15 Okla. Cr. 162, 175 Pac. 727; Smith v. State, 14 Okla. Cr. 250, 174 Pac. 1107.

It is next contended that the court erred in permitting Mrs. Wilburn to testify in rebuttal relative to threats made by the defendant, for the reasons that the answers made by the witness were not responsive to the questions asked, and further that said testimony was inadmissible because no proper predicate was made for its admission by first propounding to the defendant the question as to whether or not he had, to such witness, made any such threats.

This assignment of error is without merit. The record discloses not only that the proper predicate was made for the ad-

mission of Mrs. Wilburn's testimony in rebuttal, but also that the evidence was admitted without objection upon the defendant's part. The defendant having interposed as a defense self-defense, it became competent to interrogate him upon the question of his having made threats against the deceased. This evidence would have been admissible in chief to show malice and ill will on the part of defendant against deceased.

The only objection made to this evidence by counsel for the defendant was by motion to strike the same on the ground that the answers were not responsive to the questions. The motion was not well taken, as the answers were not only responsive to the questions, but were material to the issues.

Lastly, it is contended that the trial court erred in allowing the state in rebuttal to repeat certain evidence which had theretofore been introduced in chief.

It appears that the witness Marshall Shackelford testified in chief for the state that he was plowing some ground approximately one-quarter of a mile from the scene of the killing; that he heard the shots fired, and looked in the direction of the shooting, and saw Jess Jackson, who was a witness for the state, running south on the public road away from the scene of the killing, and at the same time he noticed the defendant and his son running east from the scene of the killing in the direction of defendant's home; that he continued to notice Jackson, and that Jackson ran quite a distance south, and then turned around and ran back north again to within 20 or 30 yards of the place where the killing occurred, and then turned around and ran south and came down to the point where the witness Shackelford was plowing. The defendant, as a witness in his own behalf, testified that he noticed Jackson return, after running south, to the body of the deceased and stoop over the same. In rebuttal for the state the witness Shackelford was recalled, and the court permitted the state to

ask him this question (after an examination of the record as to what the witness had testified to in chief on this subject), "Did you ever see him (Jackson) go back to the body; did he go back to the body?" to which the witness answered, "No, sir." On cross-examination counsel for the defendant asked the witness, "Could you see the body from where you were?" to which the witness answered, "No, sir."

This is the evidence complained of, and, while we think it was largely cumulative, and a repetition of what had been introduced in chief, it is apparent that it was not sufficiently prejudicial, even if improperly admitted, to require a reversal of this judgment.

We are convinced, after a careful examination of the entire record, that the defendant had a fair and impartial trial.

The judgment is affirmed.

DOYLE, P. J., and BESSEY, J., concur.