# ROY MURPHY v. STATE.

No. A-9708.　April 9, 1941.

(112 P. 2d 438.)

2

6

8

14

18

20

Mathers & Mathers, of Oklahoma City, for plaintiff in error.

Hugh Conway, Co. Atty., of Enid, Garfield County, Mac Q. Williamson, Atty. Gen., and Owen J. Watts, Asst. Atty. Gen., for the State.

DOYLE, J. This is an appeal from a judgment and sentence of the district court of Garfield county, pronounced and entered pursuant to the verdict of a jury finding defendant, Roy Murphy, guilty of murder and assessing his punishment at death.

The errors assigned and argued will be considered in the order presented in appellant's brief.

It is first urged that the court committed reversible error in overruling defendant's application for a continuance.

When the case was called for trial, May 10, 1939, defendant filed a motion for continuance, alleging in substance that for three weeks he has not and could not eat anything or take any food or nourishment; and he is mentally incompetent to make a rational defense to the charge against him; that he is physically too weak to go to trial, and is in constant pain and suffering, and his mind so affected that he cannot go to trial at this time; that having been brought here in an ambulance he has been required to appear in this court upon a cot; that he cannot on account of his weakened mental and physical condition consult with his attorney as to his defense and on account of his condition is unable to take the witness stand to testify as to what occurred at the time of the fatal difficulty; that he is wholly unable to withstand the ordeal of a trial at this time, and prays the court to order an examination by physicians as to his physical and mental condition.

The application was resisted by counsel for the state. Thereupon a hearing was had.

Ole Hill, county jailor, called by the state, testified: "Roy Murphy was placed in jail January 14th, and has off and on received medical treatment; that he has been in bed and has refused to partake of any food since April 19th. He gave no reason for his refusing to eat"; that when he talked to him today he appeared rational.

Dr. O. R. Gregg, jail physician, testified that in January defendant said he was sick and could not keep anything on his stomach, and he gave him glucose injections; that after April 19th, he refused to eat, and his present condition is brought about by the lack of food; that he talked to him today at the jail, offered to give him an injection of glucose and he refused to take it; in his opinion defendant at this time is rational and able to go, to trial.

Dr. R. G. Jacobs, physician and surgeon, testified that he is on the staff of the three hospitals in Enid, that on the request of the wife of defendant he called on him in January and three or four times later. That going without food for a period of three weeks would not affect his mind materially.

At the request of counsel for defendant he examined the defendant in open court, found his blood pressure down, but not more so than any other man who had been in bed and not eaten; and he could see no reason why he could not testify intelligently, but not all at one time.

At the request of his counsel the defendant was sworn. Asked several questions by his counsel, he made no answer.

Mrs. Alma Murphy testified that she frequently visited her husband in jail; that he could not keep anything in his stomach; that yesterday in jail she talked to him, but he just whispered, and she could not understand what he

said; that he had lost about 40 pounds in weight since placed in jail.

After hearing the argument of counsel, the court ruled: "The defendant's motion for continuance will be overruled. Exceptions allowed."

It has been uniformly held by this court that applications for a continuance are addressed to the sound discretion of the trial court, and that this court will not reverse a judgment of the trial court upon the ground that it refused to grant a continuance, unless a manifest abuse of discretion appears.

The rule as stated in 22 C. J. S., Criminal Law, § 845, is as follows:

"Continuances, based on the mental or physical condition of accused at the time of the application therefor, are addressed largely to the discretion of the trial court, and the court may properly deny a continuance asked on such ground in the absence of a showing that proceeding with the trial will operate to the substantial prejudice of accused or endanger his life or health."

Citing Nix v. State, 20 Okla. Cr. 373, 202 P. 1042, 26 A. L. R. 1053, wherein this court held:

"Where, in a motion for a continuance, the defendant urges that he is a necessary witness in his own behalf, and is physically and mentally unable to stand the strain and tension of a trial and to properly aid and advise his counsel, held, that the overruling of the motion, under the circumstances recited in the opinion, was not error." And see Morrison v. State, 35 Okla. Cr. 311, 250 P. 543; Cole v. State, 46 Okla. Cr. 365, 287 P. 782.

Upon the record before us we think it evident that there was no manifest abuse of discretion in overruling the motion and application for a continuance in this case. Further, there is no reason to believe that upon a second trial an intelligent and honest jury would arrive at any

other verdict than that of guilty of murder as charged in the information.

On the same day, the defendant, through Alma Murphy, his wife, and James H. Mathers, his counsel, filed his motion for a jury trial on the issue of present insanity. A jury was duly impaneled, and the evidence introduced. The jury returned their verdict finding the defendant, Roy Murphy, sane.

Thereupon the defendant asked the court to give three days in which to file a motion for new trial, which was denied. Then defendant asked the court for time within which to make up a case-made and appeal from said finding, which the court denied. Exceptions allowed.

The next two assignments based on these rulings of the court are wholly without merit, as was said by this court in Alexander v. State, 71 Okla. Cr. 47, 107 P. 2d 811:

"The proceeding prior to murder trial to test defendant's sanity was a collateral issue, and hence an order finding defendant to be sane was not an 'appealable order' since the only effect that the proceeding could have had on the murder trial would have been to postpone it had defendant been found insane."

In Weiland v. State, 58 Okla. Cr. 108, 50 P. 2d 741, 744, it is said:

"The trial of the question of present sanity is in the nature of a special proceeding not involving any question of guilt or innocence, but a collateral issue. The court here followed the civil procedure, that is, he ruled and instructed that the burden was on the defendant on that issue, and that he was entitled to the opening and closing in presenting his testimony and in the argument, and further ruled and instructed that nine of the jurors might return a verdict. His ruling was in conformity to the statute regulating the procedure in such cases. Sections 3214, 3215, Okla. Stat. 1931 [22 Okla. St. Ann. §§ 1164,

1165], as well as in conformity to the general rule, 16 C. J. p. 791, § 2017; 14 R. C. L., Insanity, § 59." And see Alder v. State, 53 Okla. Cr. 374, 12 P. 2d 545.

In 16 C. J., Criminal Law, sec. 2017, it is said:

"The only issue presented at a preliminary trial of present insanity is whether defendant has sufficient soundness of mind to appreciate the charges against him, and the proceedings thereon, and to enable him to make a proper defense, and therefore whether or not he may be compelled to proceed with the trial of the main issue of guilty or not guilty; and the evidence should be confined to defendant's mental condition at the time of trial, except as far as his mental condition at other times may aid in determining his present condition." See, also, 23 C. J. S., Criminal Law, § 940.

The next assignments are in substance that the court erred in overruling defendant's challenges for cause to certain jurors on the ground that said jurors had formed a fixed opinion as to the guilt or innocence of defendant.

From the jurors selected to try the case, it appears the jurors Paul Caskey and Roy Stotts were passed unchallenged for cause by defendant.

As to jurors Charles Horton, C. F. Korthank, Marion Brown, Henry Gellerman, Henry Beaman, Fred Skouby, and Glenn Hamons, their voir dire examinations do not appear in the record.

From the examination of the juror Mike Pritchett, by defendant's counsel, it appeared that he had read some of the testimony that was published in the newspapers, and that he had talked to several people about the case, but they did not detail what the evidence would be or what they understood the facts to be; that he did not form an opinion as to the guilt or innocence of the defendant, and did not have any opinion now. That if selected on the jury he would require the state to prove beyond a

reasonable doubt that Roy Murphy is guilty before he would return a verdict of guilty.

From the examination of the juror Floyd Goff, it appeared that he read about the case in newspaper articles; had not discussed the case with any one who purported to know the facts about the case; any impression he might have about the case was from what was in the newspapers.

Asked:

"Q. Could you lay aside any impression you might have gotten from the newspapers and hearing people talk and pass on the case solely from the evidence you hear here from the witness stand? A. Yes, sir. Q. At this time you do not have any fixed opinion of the guilt or innocence of the defendant? A. No, sir. Q. You could enter the case with your mind open and would do it? A. Yes, sir. Q. Do you know of any reason why you could not sit here and act fairly and impartially both for the state and the defendant? A. No, sir. Q. And you would do that if selected? A. Yes, sir."

His examination by counsel for defendant was as follows:

"Q. You didn't let what you read and heard cause you to form an opinion? A. No, sir. Q. Now, you have been reading all these articles in the newspapers? Yes, sir. Q. You didn't read any article purporting to give what any witness testified in any hearing? A. No, sir. Q. From reading these articles did you not come to any opinion or conclusion as to the guilt or innocence of the defendant on this charge? A. No, sir. Q. Whatever opinion you arrived at from this reading you still retain at this time? A. Yes, sir. Q. And the only way you will get rid of that opinion is by hearing something that will be different from what you read and heard that will cause you to change it? A. Yes, sir. Mr. Mathers: We challenge the juror for cause. Mr. Conway: Q. Mr. Goff, I understand the opinion you received has been from newspaper reports and perhaps the radio? A. Yes, sir. Q. Any impression

you might have had about the guilt or innocence of the defendant, you could lay that aside and pass on this case entirely from the evidence you receive here?   A. Yes, sir. Q. And you would lay that aside?   A. Yes, sir.   Mr. Mathers: Q. But it would take evidence to change the opinion you have now formed, wouldn't it, or how could it be changed?   The Court: He said he didn't know anything about the facts but formed his opinion on newspaper items.   Mr. Mathers: Q. You say you didn't talk to any one?   A. No, sir.   Q. Then the opinion you got is from what you heard and read?   A. Yes, sir.   Q. And you don't know whether they are facts or not?   A. No, sir.   Mr. Mathers: We think this juror is disqualified and we challenge him.   The Court: The challenge is overruled.   Exceptions."

As to the juror Donald Edwards, his voir dire examination does not appear in the record.

The record shows that 15 jurors were excused by the court upon challenges by defendant for having fixed opinions as to the guilt or innocence of defendant.   The defendant exhausted his nine peremptory challenges.

In his brief defendant states that he was obliged to exhaust all his peremptory challenges upon jurors he had challenged for cause, which were overruled by the court.

The question presented is: What shall be deemed a disqualifying opinion?

These jurors were challenged for actual bias, as defined by paragraph 2 of section 2997, Sts. 1931, 22 Okla. St. Ann. § 659:

"For the existence of a state of mind on the part of the juror, in reference to the case, or to either party, which satisfies the court, in the exercise of a sound discretion, that he cannot try the issue impartially, without prejudice to the substantial rights of the party challenging, and which is known in this chapter as actual bias."

The Code of Criminal Procedure further provides:

"In a challenge for implied bias, one or more of the causes stated in the second preceding section must be alleged. In a challenge for actual bias, the cause stated in the second subdivision of the third preceding section must be alleged; but no person shall be disqualified as a juror by reason of having formed or expressed an opinion upon the matter or cause to be submitted to such jury, founded upon rumor, statements in public journals, or common notoriety, provided it appears to the court, upon his declaration, under oath or otherwise, that he can and will, notwithstanding such opinion, act impartially and fairly upon the matters to be submitted to him. The challenge may be oral, but must be entered upon the minutes of the court." Sec. 3000, Sts. 1931, 22 Okla. St. Ann. § 662.

One accused of crime is by the Constitution guaranteed a fair and impartial trial, Okla. St. Ann. Const. Bill of Rights, § 20, but to insure this, it is not meant that jurors shall never have heard of the case, or shall not have any impression, concerning any of the facts. In this day and age it would be difficult to find citizens competent for jury service who have not some impression as to the case, derived from newspaper accounts. The constitutional guaranty only excludes those jurors who have an opinion upon the merits of the case, based upon such testimony as may reasonably be expected to be presented upon the trial, or an opinion founded on personal ill will towards the accused.

In the case of Turner v. State, 4 Okla. Cr. 164, 111 P. 988, 996, we said:

"Under the statute, an opinion formed or expressed as to the guilt or innocence of the defendant founded upon rumor or newspaper reports does not disqualify a juror, provided it appears to the court upon the declaration of said juror he can and will notwithstanding such opinion act impartially and fairly upon the law and evidence. As

we construe the statute, the competency of a juror is a question of fact, to be determined by the court in the exercise of a sound discretion, and constitutes a legislative definition of the constitutional provision. However, it cannot be regarded as changing in any degree the essential qualifications which jurors must possess. It merely furnishes a test by which those qualifications are to be determined. It makes the declaration of the juror 'that he can and will, notwithstanding such opinion, act impartially and fairly upon the matters to be submitted to him, competent, as bearing upon the question of his impartiality, and requires the court to consider such declaration, when so made.' The statute does not attempt to determine what shall be the probative force of the declaration of the juror, or how far it shall have the effect of relieving him of the disqualification arising from such an opinion. The declaration when so made is evidence to be received and given such weight as under all circumstances appearing it is fairly and justly entitled to. Before it can operate to remove the disqualification, the court must be satisfied of its truth, and that question is left to be determined from all the facts and circumstances appearing from his examination upon the voir dire."

In the case of Gentry v. State, 11 Okla. Cr. 355, 146 P. 719, this court held:

"The issue raised upon a challenge for cause to a juror in a criminal case, on the ground that he had formed or expressed an opinion, as to the issues to be tried, is one of mixed law and fact; and the finding of the trial court upon the issue ought not to be set aside by an appellate court unless it appears that upon the evidence the trial court ought to have found that the juror had formed such an opinion that he could not in law be deemed impartial."

· In the opinion it is said:

"The increased facilities, through the press, of spreading stories of crime, as items of news, especially among the more intelligent classes, makes it difficult to lay down a fixed rule which would disqualify persons who formed their opinions from newspaper reports, or common report

and rumor, unless it be of that character which impairs the impartiality of the juror by engendering a bias or prejudice which is fixed, and would require evidence to remove. Under the provisions of the statute the competency of a juror is a question of fact to be determined by the court. Before the court can so determine, it must be shown by an examination of the juror, upon his voir dire, not only that his opinion was formed solely in the manner stated, but, in addition to this, the juror must swear unequivocally that he feels able, notwithstanding such opinion, to render an impartial verdict upon the law and the evidence. * * *

"Under our statute, the mere expression of an opinion by a juror in common conversation, without anything to show ill will, hostility, or a fixed determination of belief, is not a legal ground of challenge for cause. * * *

"The issue raised upon a challenge for cause to a juror in a criminal case, on the ground that he has formed an opinion founded upon rumor, statements in public journals, or common notoriety, and upon which he has expressed an opinion, is one of mixed law and fact; and the finding of the trial court upon the issue ought not to be set aside by a reviewing court, unless it appears that upon the evidence the trial court ought to have found that the juror had formed such an opinion that he could not in law be deemed impartial."

To the same effect are: Smith v. State, 14 Okla. Cr. 250, 174 P. 1107; Pope v. State, 15 Okla. Cr. 162, 175 P. 727; Tuggle v. State, 20 Okla. Cr. 314, 209 P. 187; Littrell v. State, 22 Okla. Cr. 1, 209 P. 184; Warren v. State, 24 Okla. Cr. 6, 215 P. 635; Elkins v. State, 29 Okla. Cr. 175, 233 P. 491; Lemke v. State, 56 Okla. Cr. 1, 32 P. 2d 331.

The purpose of the examination of a juror on his voir dire is to ascertain whether there are grounds for a challenge for either actual or implied bias, and, further, to enable the defendant to exercise intelligently his peremptory challenges.

A defendant is entitled to a jury which will insure him a fair and impartial trial, but not to unlimited choice in attempt to secure a jury which will acquit him.

In the case at bar there is nothing in the record which indicates any abuse of discretion on the part of the trial court in the selection of the jury, and we find nothing in the record which indicates that the jury was anything but fair and impartial.

It follows the trial court did not commit error in overruling the defendant's challenges for cause.

It is next urged that the trial court erred in permitting improper cross-examination of defendant in asking him if he had not been arrested several times here and in Tonkawa, for short changing. And the further question: "I will ask you if you didn't kill a woman in Tulsa by the name of Nell Bailey in a rooming house?"

As a general rule the scope of the cross-examination of a witness is largely a matter of discretion of the trial court.

It may be shown on cross-examination that a defendant has been convicted of a crime for the purpose of affecting his credibility. Sec. 268, Sts. 1931. 12 Okla. St. Ann. § 381.

The rule obtains in this jurisdiction that a defendant taking the witness stand and testifying in his own behalf may be cross-examined the same as any other witness. He, like any other witness, may be asked questions pertaining to the matter at issue or that would go to his credibility as a witness. His cross-examination is not confined to a mere categorical review of the matters stated in the direct examination. He may be asked questions irrelevant and collateral to the issue for the purpose of testing his memory, affecting his credibility and the weight

of his testimony. Graham v. State, 28 Okla. Cr. 266, 230 P. 763.

Another well-settled rule is that any previous act of the defendant may be admitted in evidence against him provided it has any logical or legal tendency to prove any matter which is in issue. The general principle is thus tersely stated by Cushing, Chief Justice, in State v. Lapage, 57 N. H. 245, 24 Am. Rep. 69:

"Any act of the prisoner may be put in evidence against him, provided it has any logical and legal tendency to prove any matter which is in issue between him and the state, notwithstanding it might have an indirect bearing, which in strictness it ought not to have, upon some other matter in issue."

In the case before us it appears from the record that the errors complained of were invited on the part of the defense. Defendant on direct examination in response to counsel's questions testified that he has never before shot any person, and that together with his brother, Harry, in Tonkawa, they had a dispute with a service station attendant over the price of gasoline furnished, and were arrested, but were immediately discharged.

In Harris v. State, 14 Okla. Cr. 489, 173 P. 958, 963, it is said:

"The alleged errors are technical, but this court is frank to admit that certain things occurred during the trial of this case which should not have occurred; but the doctrine has been thoroughly established that where evidence on the part of the state makes out a case of cold-blooded murder, and under defendant's own testimony he is at least guilty of manslaughter in the first degree, and the conviction is only for manslaughter in the first degree, the judgment of conviction under such circumstances will not be set aside, although certain technical errors, occurred during the trial, the defendant being deprived of no constitutional or statutory right."

The Legislature of this state, by the enactment of section 3206, O. S. 1931, 22 Okla. St. Ann. § 1068, has made it clear that no judgment of conviction shall be set aside or new trial granted "on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

It is not error alone that reverses judgments of conviction of crime in this state, but error plus injury, and the burden is upon the plaintiff in error to establish to this court the fact that he was prejudiced, in his substantial right, by the commission of error; where, according to defendant's testimony, he is guilty of the crime for which he was convicted, under such circumstances, none but fundamental error will operate to reverse the judgment of conviction.

Finally, it is contended that the court erred in refusing defendant the right to prove by testimony of witnesses other than himself certain specific acts of personal violence upon numerous persons, committed by the deceased, all of which were known by defendant at the time and prior to the homicide. Citing the case of Mulkey v. State, 5 Okla. Cr. 75, 113 P. 532.

In the Mulkey Case, where the defense was justifiable homicide in self-defense, evidence to prove specific acts of violence on the part of the deceased excluded these acts of violence being known to the defendant; the court held:

"Competent for the purpose of showing the disposition of the deceased to become violent without provoca-

tion, and as tending to show his condition of mind, and violent temper on such occasions, and his disposition to use deadly weapons."

In the opinion we said:

"As a general rule, the evidence of the character of the deceased must be confined to his general reputation, and evidence of particular acts of violence is inadmissible unless they were directly connected with that involved in the homicide. Usually testimony of this character would have but little bearing upon the case, and the general reputation of the deceased as being a desperate and dangerous man would be sufficient. But, under the facts which the evidence here tends to prove, these prior assaults and acts of violence, being known to the defendant, were important circumstances in determining from the standpoint of the defendant the reasonableness of the danger apprehended by him, and for this reason it was error to exclude this testimony."

We deem it unnecessary to burden this opinion with each specific offer of proof, and will only refer to the record as stated in defendant's brief:

"Mr. Mathers: We make all these offers and ask the court's permission to introduce such evidence before the jury, that they may determine whether or not Roy Murphy at the time of the fatal difficulty, had reasonable grounds to believe that his life was in danger at the hands of the deceased, Harry Murphy, that the jury may determine that Harry Murphy was a dangerous man, easily angered and mad and without any apparent reason or provocation would attack and assault and kill people on slight or no provocation.

"Mr. Watts: (Asst. Atty. Gen.) For the purpose of the record the state will agree if the witnesses were permitted to and allowed to testify in this case at this trial, that they would testify substantially and materially as stated by defendant's counsel, however the state doubts the competency and materiality of the statement made by Mr. Mathers, the defendant's counsel.

"We would call the court's attention to the fact, that prior to calling of this witness to the stand the defendant has taken the stand and testified that he had heard and believes these things and knew the deceased to be a violent, turbulent character, and from what he had heard and knew himself and believed—the truthfulness of these matters are not involved in this law suit, and the state has no objection, at this time, of the defendant's counsel making any additional offer to show specific acts of violence on the part of the deceased which he cares to offer in evidence at this time."

It is a general rule in most jurisdictions that on a trial for homicide where the defendant has laid a proper foundation by evidence tending to show that, in committing the homicide he acted in his self-defense, he may introduce evidence of the turbulent and dangerous character of the deceased. See Annotation in 64 A. L. R. 1029, and Annotation 121 A. L. R. 380. Citing Sneed v. Territory, 16 Okla. 641, 86 P. 70, 8 Ann. Cas. 354; Mulkey v. State, 5 Okla. Cr. 75, 113 P. 532; Mathews v. State, 16 Okla. Cr. 466, 184 P. 468; Elliott v. State, 18 Okla. Cr. 230, 194 P. 267; Edwards v. State, 58 Okla. Cr. 15, 48 P. 2d 1087.

In Robinson v. Territory, 16 Okla. 241, 85 P. 451, it was held that the ruling of the trial court excluding the testimony of a third person as to the details of a fight between such person and the deceased, a short time before the homicide, did not constitute reversible error. The trial court having permitted the introduction of testimony by such witness with reference to the deceased's being armed with a revolver at the time of the difficulty between himself and deceased, and the appellate court pointing out the details of a personal encounter between the third person and the deceased, could not be material or relevant to the questions at issue in a homicide prosecution. The court observed that even if the ruling of the

trial court was erroneous, two other witnesses, who were eyewitnesses to the encounter between the third person and deceased, were permitted to testify to all of the facts and details.

In Brock v. State, 55 Okla. Cr. 410, 32 P. 2d 88, 89, the trial court permitted defendant to testify relative to numerous specific acts of violence which deceased had told defendant he had committed on other persons, but which acts of violence defendant did not witness or have knowledge of, other than as told him by deceased, which information the defendant testified he believed and acted on in part as a foundation for his belief of imminent danger to himself. It was held that the trial court properly refused to permit the defendant to introduce the alleged third persons to give their version of such alleged acts of violence and difficulties on the part of deceased, which they had witnessed or known.

In the opinion it is said:

"The question before the jury was not whether the stories told by deceased to defendant of his quarrels, brawls, and difficulties were true, but was: Did defendant believe deceased had committed such acts detailed to him and by reason thereof believe deceased was a dangerous and violent man, and, acting on such belief, commit the killing in his own self defense. If he believed what deceased told him, it was immaterial whether it was the truth or a lie for the purposes of the trial. Hence, the mere fact that defendant might have shown by the proffered testimony that deceased had told him the truth could not have affected the issue in the case."

It follows from what has been said and the authorities cited, no error was committed by the trial court in excluding the offer of proof of specific acts of violence by the deceased against others than defendant, he in his direct examination as a witness in his own behalf having testified

that all of said acts were known by him at the time of the homicide.

We have given this case that careful study which its importance demands, and having considered the alleged errors argued and given due weight to every proposition urged by counsel for defendant, we find no error committed on the trial of the case that would require or justify a reversal of the conviction.

A judgment and sentence of death should be above suspicion of any partiality, passion or prejudice. A most careful examination has revealed nothing in the voluminous record that gives us the right to say that the interest of justice requires a new trial.

As to the character of this homicide there can be no doubt. On the undisputed facts it was deliberate murder. According to his own statement on the witness stand, appellant is guilty of a cruel and cowardly assassination. While the necessity for taking human life need not be one arising out of real or actual or imminent danger in order to justify the slayer, as he may act upon the belief arising from appearances which give him reasonable cause to apprehend danger of death or great bodily harm, although there may be no actual danger and his guilt must depend upon the circumstances as they appeared to him, yet the danger must not be brought on by the unlawful acts or wrongful conduct of the slayer, and no person has the right to kill another through unfounded fear or cowardice.

It is also urged that the jury abused its discretion in assessing the death penalty, and that the judgment and sentence should be modified to imprisonment for life.

In a capital case, the law of our state in its great humanity allows the jury, after they have first determined the question of guilt, to assess the punishment, which may be death or imprisonment for life at the discre-

tion of the jury (section 2222, C. S. 1931, 21 Okla. St. Ann. § 707), and, even after the jury say the defendant should suffer death, this court, in furtherance of justice, has the power to modify the judgment to imprisonment for life at hard labor. Sec. 3204, O. S. 1931, 22 Okla. St. Ann. § 1066.

In the case of Wilson v. State, 17 Okla. Cr. 47, 183 P. 613, 620, it is said:

"By this provision it seems to have been the intention of the Legislature to vest this court with power to modify the judgment, when such a course would be in furtherance of justice and conduce to the humane administration of the law. In a capital case it is the duty of this court to examine, with the greatest care, the whole record in favor of life, and review the case upon the merits to determine whether justice requires a modification of the judgment to imprisonment for life." And see Fritz v. State, 8 Okla. Cr. 342, 128 P. 170; Anthony v. State, 12 Okla. Cr. 494, 159 P. 934; Owen v. State, 13 Okla. Cr. 195, 163 P. 548; Westbrook v. State, 14 Okla. Cr. 423, 172 P. 464; Chambers v. State, 16 Okla. Cr. 238, 182 P. 714; McConnell v. State, 18 Okla. Cr. 688, 197 P. 521; Young v. State, 19 Okla. Cr. 363, 200 P. 260; Phillips v. State, 27 Okla. Cr. 108, 225 P. 180.

In the case of Methvin v. State, 60 Okla. Cr. 1, 60 P. 2d 1062, 1070, it is said:

"The law regards human life as the most sacred of all interests committed to its protection; and no more solemn duty can be imposed upon the courts than the duty of protecting, and the duty of taking, human life. To take the life of a human being is an awful thing even when it is taken by the law in the due administration of justice."

In Anthony v. State, supra, it is said:

"The power of this court to modify a judgment inflicting the death penalty for murder to imprisonment for life at hard labor, when deemed proper in the furtherance of justice, is not the power to commute by the chief

executive of the state. The judicial power to modify a judgment and the executive power to pardon or commute are wholly distinct in their nature. The one is an award of justice. The other is an act of grace."

After a careful consideration of all the facts in this case we are unwilling to lend the sanction of our approval to inflicting the death penalty, because in our opinion the undisputed facts in evidence do not justify the highest punishment authorized by the law.

While we think the defense by reason of fear entirely failed and was properly discredited by the jury, yet it appears that deceased had previously made assaults with intent to kill upon both defendant and his codefendant, and it appears that on a subsequent day of the term his codefendant on his trial was convicted only of manslaughter in the first degree with sentence of imprisonment for six years. It appears that defendant during the trial was unable to leave the stretcher upon which he was each day brought into court; that he is illiterate and was reared by the two older brothers in an atmosphere of crime, and it would have been more satisfactory if the guilt of defendant had been altogether established by the testimony of reputable witnesses, free from any imputation of interest.

Our conclusion is that the punishment assessed is excessive, and that the ends of justice would best be served by modifying the judgment and sentence of death to imprisonment at hard labor in the penitentiary for life.

The judgment of the district court of Garfield county herein is therefore modified to the extent that the sentence will be changed from the infliction of the death penalty to that of imprisonment in the state penitentiary at hard labor for life, as thus modified the judgment is affirmed.

BAREFOOT, P. J., and JONES, J., concur.