Higino Cat **JIMINEZ**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. M–75–619.

Court of Criminal Appeals of Oklahoma.

Feb. 3, 1976.

Carroll Samara and Lawrence H. Mc-Millin, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Harold T. Garvin, Jr., Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Higino Cat Jiminez, hereinafter referred to as defendant, was charged and tried in the District Court, Oklahoma County, Case Nos. CRM–75–979 and CRM–75–989, for the offenses of Unlawful Possession of Marihuana and of Operating a Motor Vehicle While Under the Influence of Intoxicating Liquor, respectively. The defendant was convicted of Operating a Motor Vehicle While Under the Influence of Intoxicating Liquor, in violation of 47 O.S.1971, § 11–902. The jury fixed his punishment at imprisonment in the County Jail for a period of six (6) months and a fine in the amount of Five Hundred ($500.00) Dollars, and from said

judgment and sentence a timely appeal has been perfected to this Court.

The State's first witness at trial was D. N. Smith, an officer in the Traffic Division of the Oklahoma City Police Department. Officer Smith testified that on March 28, 1975, at approximately 10:05 p. m., while in his patrol car, he observed the defendant operating a 1964 Buick automobile in an unusually noticeable manner. The officer testified that the defendant failed to yield to a red signal light until he had driven his car entirely into the intersection, blocking the flow of traffic in the right of way. Further observing the defendant's actions, the officer testified that on pulling out of the intersection the defendant drove his car completely left of center and was barely avoided by oncoming traffic which properly had the right of way. The officer stated that he then engaged his emergency equipment and began pursuit of defendant. When the defendant stopped, he and the patrolman both got out of their automobiles at which time the patrolman requested the defendant's driver's license. The defendant was unable to produce his license at this time claiming that he had misplaced it. During this brief exchange, the officer detected the odor of intoxicating liquor on the breath of the defendant, and noticed that the defendant was very unsteady on his feet. The officer then requested that the defendant approach the patrol car and get inside. Inside the unit, the officer advised the defendant of his constitutional rights and informed him of the necessity of the State chemical test or the alternatives thereto. Because the defendant was alone, Officer Smith called a wrecker and then returned to defendant's automobile to make an inventory of personal possessions which defendant had in the car. During this inventory the officer found a Prince Albert tobacco can next to the driver's seat. The officer opened the can and found a green, leafy type substance, appearing to be marihuana. Again, the officer returned to the patrol car, repeated the Miranda warning and placed the defendant under arrest for possession of marihuana. The officer then drove to the mobile lab unit where the defendant elected to take a breathalyzer test. The officer finally testified that the results of the laboratory examination on the contents of the Prince Albert tobacco can found in defendant's car revealed a high grade of marihuana.

The State's next witness was Ted G. Carlton, an officer with the Oklahoma City Police Department who was assigned to a mobile alcohol laboratory processing unit located at 25th and South Western. Officer Carlton testified that when Officer Smith brought the defendant to the van the defendant was slow and lethargic in his movements, had a strong odor of alcohol on his breath, and had bloodshot eyes and dilated pupils. At this point Officer Carlton testified as to his qualifications to operate the breathalyzer and he also testified that he had complied with the proper operating procedure of the instrument in order to facilitate an accurate examination of the defendant. The result of the defendant's breathalyzer test was a 0.11% alcohol concentration weight by volume.

The State also called as a witness one Melvin Hett, a forensic chemist employed by the Oklahoma City Police Department and stationed at the Oklahoma State Bureau of Investigation. The witness testified that the green leafy substance inside the Prince Albert tobacco can was definitely marihuana.

Thereafter the State rested.

The defendant, testifying in his own behalf, stated that he was an automobile dealer and that on the day of the arrest he was driving around town placing jars in various businesses for donations to buy his church a bus. The car in which he was driving had recently been purchased and he stated that the Prince Albert tobacco can, containing the marihuana, was not his but had been left in the car by the previous owner. The defendant also testified that just prior to the arrest by Officer Smith he had consumed two beers. He stated that the car was not running properly and

he had to keep his foot on the accelerator at the same time he was braking the automobile in order to keep the car from dying. Even though the defendant was having trouble with his car, he maintains that he did not pull out into the intersection as Officer Smith had testified. Defendant testified that he did have his driver's license with him at the time of the arrest and that he did present it to the officer.

Defendant's second witness was Otto Askins. Basically, the witness testified that he had known the defendant for approximately 25 years and that as far as he knew the defendant was of good moral character.

Thereafter the defense rested.

The following excerpt is the predicate for the defendant's sole assignment of error which is based on a line of questioning during the cross-examination of the character witness, Otto Askins, specifically referring to various charges which had previously been brought against the defendant:

"Q. You are a professional bondsman?

"A. Yes, sir.

"Q. Are you also a preacher?

"A. No.

"Q. You are not a preacher?

"A. No, sir.

"Q. Your testimony is that you have known Mr. Jiminez for how long?

"A. I would guess twenty-five years, give or take a year.

"Q. And, your testimony is that his reputation in his community is good, is that correct?

"A. I would say very good among people he associates with.

"Q. Are you aware that between the years 1940 and 1950, in Oklahoma County, Oklahoma, Mr. Jiminez has been charged and incurred various bond charges—

"MR. WILLIAMS: Object, Your Honor. He can ask only on convictions.

"THE COURT: You brought his character in issue.

"MR. EDWARDS: Now, I can bring it out before the jury and it doesn't have to be convictions.

"THE COURT: Convictions are the only ones that can be brought in, but his character has been brought into the picture.

"MR. EDWARDS: Completely different.

"THE COURT: And, you can ask him if he is aware of any charges.

"MR. WILLIAMS: Please note our exception.

"THE COURT: Yes, sir.

"Q. (By Mr. Edwards) During the years 1940 to 1950, he has been charged from larceny to assault and battery to child abandonment, consorting with prostitutes. Were you aware of this?

"A. I had read it in the paper a time or two where he had been charged with something.

"Q. Plus disorderly conduct and gambling. Are you aware—

"A. I read something in the paper.

"Q. Are you aware that from 1950 to 1956, he was charged and incurred various bond forfeitures for vagrancy, wife and child abandonment, possession of gambling paraphernalia, vagrancy by non support of his family—

"THE COURT: I think we have gone far enough into this.

"MR. EDWARDS: I think I have made my point and I will have no further question." (Tr. 44–46)

Specifically, the defendant contends that it is reversible error to allow the prosecution to cross-examine a character witness as to the witness' awareness of charges which had been previously filed against defendant which were neither relevant to nor bore upon charges which were then being tried. Defendant cites in support of this contention *Roberson v. State,* 91 Okl.Cr. 217, 218

P.2d 414 (1950). This case in relevant part stands for the proposition that where an accused has placed his character in issue the State may attack his character, but such an attack should only go to the general reputation of the defendant. This Court has no doubt as to the validity of the general rule just stated. However, it should come as no surprise that the law recognizes exceptions to this general rule. First of all, the *Roberson* case involves the cross-examination of the defendant himself rather than the cross-examination of a character witness, which is of a substantially different nature and, thus, this distinction renders the case inapposite.

This Court has followed an established line of authority, an exception to the above rule, which recognizes the right of the prosecution, during cross-examination of defense character witnesses, to ask questions in regard to specific charges which were previously made against the defendant. Such questions are not to be allowed for the purpose of controverting the good character of the defendant, but rather such questions are allowed for the purpose of testing the credibility of the witness; and to determine whether or not the character witness offers his testimony with full knowledge of the defendant's background. In *Webb v. State,* Okl.Cr., 311 P.2d 819 (1957), this Court cites with approval the holding of *Long v. State,* 61 Okl.Cr. 274, 67 P.2d 980, which stated as follows:

> " 'At first glance it might seem that the contention of the defendant was correct, but an examination of the authorities reveals that the overwhelming weight of the adjudicated cases is to the effect that such questions are competent on cross-examination, to test the credibility of the witness, and for the purpose of determining the weight and value to be given to his testimony in chief. It is admissible, not for the purpose of establishing the truth of such reports, but only to establish the credibility of the witness and to determine the weight of his evidence.' "

Also in *Webb v. State,* supra, this Court cited from the early case of *Stouse v. State,* 6 Okl.Cr. 415, 119 P. 271, which held that:

> " 'As the general reputation of any person is established by the opinions of witnesses as to the general estimation of his character, it is permissible upon cross-examination of a character witness to show the sources of his information *and particular facts may be called to his attention, and he may be asked if he ever heard of them.* This is permissible, not for the purpose of establishing the truth of these facts, but to test the credibility of the witness, and to ascertain what weight or value is to be given to his testimony.' " (Emphasis added)

In light of the foregoing cases, there is no doubt that the questioning which was propounded to the defense witness in the instant case was proper questioning, however, in the recent cases of *Miller v. State,* Okl.Cr., 418 P.2d 220 (1966) and *Jones v. State,* Okl.Cr., 509 P.2d 924 (1973), this Court placed some limitations upon the use of such questioning. But, in the instant case, the circumstances under which this line of questioning was allowed is not before this Court: The defendant has neither alleged that the prosecutor was in bad faith nor has he alleged that the questions at issue were propounded for any unacceptable purpose. The defendant's sole contention was that such a line of questioning is never tolerated and as can be seen from the above mentioned authority such a contention is without merit.

■ Even if this Court were to determine that the line of questioning by the prosecutor was improper, this Court fails to see any prejudice which resulted therefrom. The evidence of guilt was overwhelmingly clear, and the sentence to which the defendant was subjected hardly appears to have resulted from prejudice. Also, the fact that the jury returned a verdict of not guilty as to the possession of marihuana charge tends to negate any contention that the jury was blinded by preju-

dice. The previous charges to which the prosecuting attorney alluded during the questioning of the witness were not of a nature that would have increased the likelihood of conviction on one charge but not the other. If the result of such questions had been to prejudice the jury, the jury surely would have been as prejudiced to one charge as to the other. In *Murphy v. State,* 72 Okl.Cr. 1, 112 P.2d 438 (1941), this Court stated as follows:

> "It is not error alone that reverses judgments of conviction of crime in this state, but error plus injury, and the burden is upon the plaintiff in error to establish to this court the fact that he was prejudiced in his substantial right, by the commission of error; . . ." 112 P.2d at 455

We therefore find this assignment of error to be without merit.

In conclusion we observe that the record is free of any error which would justify modification or reversal. The judgment and sentence is, accordingly, *affirmed.*

BLISS, J., concurs.

BRETT, P. J., concurs in results.